CITY OF ELLISVILLE *et al. v.* STATE HIGHWAY COMMISSION.

(In Banc. Oct. 9, 1939. Suggestion of Error Overruled Nov. 20, 1939.)

[191 So. 274. No. 33777.]

Welch & Cooper, Deavours & Hilbun, and Milton Weems, all of Laurel, and Green, Green & Jackson, of Jackson, for appellants.

478

Edwin R. Holmes, Jr., Assistant Attorney-General, and Heidelberg & Roberts, of Hattiesburg, for appellee.

480

**Griffith, J.**, delivered the opinion of the court.

U. S. Highway No. 11 passes through the City of Ellisville—which has a population of 2,100—in a northerly and southerly direction. In doing so it occupies what was before, and is now, one of the streets of that municipality. This street was originally 66 feet wide, but when it was paved by the highway commission an additional strip of 14 feet was procured along the east side of the original street, thus making the present street 80 feet wide.

We say the present street is 80 feet wide, thereby including the additional 14 feet, because a street is defined in the law to be a road or highway within a municipality, Mobile & O. Railroad Co. v. State, 51 Miss. 137, 140; and there is not a word in the record that the strip of 14 feet was not to be used for and as a part of the highway as such. It seems to be uniformly held that where a public highway in rure has been included within municipal boundaries by annexation, the highway becomes ipso facto a street and subject to municipal control. 44 C. J., p. 889, and cases there cited. Upon the same reasoning when a public highway is projected into or through a municipality, there is the same result, unless the statute expressly and clearly provide otherwise. See, also, Section 12, Chapter 200, Laws 1938.

The concrete paving is a strip 20 feet wide in the center of the 80 feet, thus leaving 30 feet unpaved on each side. To the east and immediately adjoining the street is a lot upon which some of appellants operate a gasoline service station.

When those appellants were about to construct this station, they applied to the State Highway Commission for a permit to lay down two concrete driveways, so as thereby to connect each end of the service platform within the station with the main pavement at the center of the street; and this permit was granted with the stipulation that the area or space bounded by the right-of-way line on the east, and by the main highway pavement on the

west and by the two driveways on the north and south should not be used as a driveway or for servicing cars.

But when the station was built and was put into operation, some of the travelers would drive up to the station to the west of the pumps which were located near the right-of-way line, thereby placing themselves within the area or space above mentioned, instead of following the station driveways which lead to the east of the pumps and entirely off the right of way. The station operators did not refuse to serve patrons who drove up to the west of the pumps, and who remained while being served, in the highway-street but immediately at the edge thereof. The highway commission thereupon erected around this space between the filling station and the paved portion of the highway, a number of concrete posts, which were so obviously a menace to the safety of travelers that the city, on June 13, 1938, adopted an ordinance prohibiting any person from placing in any street within the said City of Ellisville any obstruction of whatever nature which would endanger travelers, or which would interfere with the free use of the streets by them, and further ordered that any such obstructions should be removed. The city on the same date enacted a general parking ordinance which provided that automobiles and other motor driven vehicles should park, and be allowed to park, on certain streets including the one here in question, at the curb and parallel with the street; and the ordinance further provided that motor driven vehicles when so parked might be serviced by any filling station, provided the parking for such service should not exceed one hour.

In obedience to the ordinance first mentioned the city authorities removed the posts, whereupon the State Highway Commission, on June 28, 1938, adopted a rule or regulation declaring that "no part of any state highway shall be used by any person, firm or corporation for the purpose of servicing automobiles" or other motor driven vehicles, and ordering that no person should interfere with any posts, or other structures placed in a state highway by the commission for the purpose of confining

traffic to that portion set apart by the commission for traffic purposes.

And as the next step, the highway commission caused to be placed along the lines previously occupied by the posts, a concrete curbing about four inches high enclosing a grass plot with shrubbery therein, so situated that no automobile could park in the said space next to the curb at or near said service station. And when the city authorities were about to remove this as an obstruction within the terms of the ordinance aforementioned, the highway commission filed its bill for an injunction against the city, making the owners of the service station parties; and on the final hearing the bill was sustained, the injunction was awarded and was made perpetual.

The city and the highway commission have joined in the request that there be decided, on the consideration of this appeal, the outstanding legal question as follows: As between the municipal authorities and the highway commission, which of the two has the paramount jurisdiction with reference to rules and regulations governing the use of streets by travelers, and particularly of the parking of cars on a street in a municipality where such street is a part of one of the primary highways of the state. We will endeavor to decide that question, and in doing so will put to one side the aforementioned agreement between the station operators and the commission, since obviously that agreement could not bind the city or the rights of the public. If the commission desire to pursue the matter further as to the station operators, it may do so by a new bill, the present bill not being adequately framed to separately reach the last mentioned parties. However, we intimate no opinion as to whether the commission has any cause of action in this regard.

Section 2414, Code 1930, brought forward from previous Codes, confers upon municipalities that full jurisdiction in respect to streets which was exercised by the municipality in the enactment of the above-mentioned ordinances, and unless that section has been modified by subsequent legislation so as to clearly confer that par-

ticular power upon the highway commission as respects primary state highways within the boundaries of municipalities, the decree in this case must be reversed.

It is said that such a modification has been worked by Chapter 47, Laws 1930, and particularly by Sections 15 and 16 of that chapter. These sections were inserted in the Code of 1930 as Sections 5005 and 5006. Section 15 requires the highway commission, when it uses the streets of a town of less than 2,500 population as a part of the state highway system, to pave the streets so used, this pavement to be uniform in dimensions and material with the said state highway; and Section 16 vests in the highway commission the powers of full jurisdiction over all matters relating to the construction and maintenance of such state highways; "to receive and assume exclusive control for the benefit of the State, of any and all highways herein or hereinafter fixed *as roads* [italics ours] constituting a part of the State Highway System," and "to make and publish rules, regulations and ordinances for the control of and to police the traffic on State Highways." Apparently, it is upon this latter section that the highway commission chiefly relies. However, that section contains the following express limitation: "Provided no rule, regulation or ordinance shall be made that conflicts with any statute now in force or which may hereafter be enacted, or with any ordinance of incorporated cities or towns."

And it is significant that in the latest legislative act, Chapter 200, Laws 1938, which is a comprehensive statute regulating traffic on highways, Section 26 thereof provides that nothing in that statute shall be deemed to prevent local authorities, with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power, from regulating the standing or parking of vehicles. The city contends that this provision is to be read in pari materia with the quoted limitation in Section 16, Chapter 47, Laws 1930, and that when so read it will be fairly apparent that it was not intended to divest the municipalities of police jurisdiction

of any part of their streets.even though some one or more of such streets had become a part of the state highway system.

We may more safely rest our conclusion upon the fact that the regulation of traffic, including the parking of automobiles, is an ordinary power of police generally exercised by municipalities as regards all the streets within their boundaries, and since the municipalities are naturally and ordinarily vested with this power, a legislative intent to take it away and confer it upon some other authority must be clearly expressed. 44 C. J., p. 930. In our opinion this unusual intent has not yet been clearly expressed by the legislature. If and when the legislative department comes to a definite and distinct conclusion in respect to these matters, it will be the province of that department to express that conclusion in definite and distinct language. In the meantime, as against doubtful or inconclusive construction, we must permit the controverted powers to remain as they have rested in the past.

It has remained, therefore, within the power and jurisdiction of the municipality to prescribe, within reason, the manner, the place at which, and the time within which, an automobile may be parked upon any street in the municipality, including those streets which are a part of a state highway. And when, as here, the parking ordinance permits an automobile to be parked at the curb parallel with the street, it allows only that which has been permitted ever since parking ordinances were first adopted in this state. And when thus parked, the ordinance further permits the automobile there to be serviced, for not exceeding one hour, with gasoline, oil, grease, air for the tires, water for the battery and radiator and the like, as does the ordinance here, we would have to be able to say that such a permission has palpably no substantial connection with a use of the street as such and is an unreasonable exercise of the powers of municipal regulation in respect to automobiles in the street before we could sanction a disregard of the ordinance; and this we cannot say or hold.

The highway commission argues that the city ordinance which allows the servicing of motor vehicles as afore-mentioned is invalid for the reason that it allows a street to be used for private commercial purposes. The use of streets and highways, for commerce, in other words, for commercial purposes, is one of the principal uses to which they are devoted. Permanent structures or obstructions may not be placed in a street for such purposes; but this has no application to temporary stops for a reasonable length of time at the edge of the street when allowed by ordinance. Else an automobile could not stop at the curb in front of a restaurant and be there served with sand-wiches or soft drinks, or in front of a drug store and have brought out to it a package of medicine, or a farmer could not park his truck in front of a general store and unload his produce into the store and receive where parked, the goods taken in exchange. These illustrations could be extended by numerous others. This could be prohibited on extremely narrow streets and where the peculiar con-ditions of traffic would render it necessary so to do, but no such conditions are presented here.

Concluding, as we do, that a municipal ordinance pro-viding and permitting as above mentioned is valid even as to a street which is a part of a state highway, and since the statute expressly provides that no rule, regulation or ordinance of the highway commission shall be made which conflicts with such a municipal ordinance, may the commission, for the sole purpose of preventing or ob-structing the operation of the ordinance, build into the street any such a contrivance as was here built which,—laying aside any dangers attendant upon such a con-trivance,—was designed for no other real purpose or object than to prevent the parking of an automobile next to the curb and being serviced there as allowed by the ordinance? This question is to be answered in the nega-tive upon the universal principle that no party may ac-complish by indirection that which he is not permitted to do directly; and, further than this, we do not deem it necessary to pursue the discussion on that point, save to

say that it is not shown, or attempted to be shown, that the contrivance built into the street in front of the filling station had any other real purpose or object or design than as above stated, along with the purpose of the highway commission to prevent the servicing of automobiles anywhere within a state highway and whether within or without the boundaries of a municipality. As to territory outside of a municipality, we are not here concerned; we deal only with the case presented which has its setting within and not without, the municipality.

Reversed, injunction dissolved and bill dismissed.