Hans C. Ness, Appellee, v. Independent School District of
Sioux City, Appellant.

No. 45580.

June 17, 1941.

Audley W. Johnson, for appellee.

Shull & Marshall, for appellant.

STIGER, J.—Plaintiff acquired his residence in Sioux City in 1913. Subsequently, defendant built a junior high school west of and adjacent to plaintiff's home. Defendant maintains a playground south of plaintiff's property. There is an alley between the two properties. Plaintiff's residence is about 12 feet from his south line. The playground runs the full length of plaintiff's lots and contains about two lots. The average number of children enrolled at the school is about 1,100. Plaintiff's complaint is that the students play baseball on the playground with the consent, encouragement and supervision of defendant; that the school children repeatedly trespass on his premises and have destroyed his flower beds, gardens, trees and vegetation and that baseballs have seriously damaged his property; that the playing of the ball games created artificial dust storms which interfered with the comfortable enjoyment of his home; that he has received and is in fear of receiving personal injuries from balls batted on his premises.

Defendant alleged in its answer that the operation of the playground was the exercise of a governmental function and denied that it constituted a nuisance and that the trespasses and damage, if any, were not caused by the defendant.

A decree was entered "restraining and enjoining the defendant from so directing or conducting the games to be played on said playgrounds as to trespass upon plaintiff's property, and from throwing, kicking or batting footballs, baseballs, softballs or any other balls used in its play so as to go or fall over and upon the premises of the plaintiff, and restraining and enjoining the defendant or students under defendant's control and supervision from going upon the plaintiff's said premises for the purpose of retrieving balls thereon thrown, batted or kicked over and upon the plaintiff's said premises." The decree

rendered judgment against the defendant in the sum of $300 for damages sustained by plaintiff.

I. It is well settled in this state that a school district, a quasi corporation, is an instrumentality of the state exercising a governmental function and is not liable for negligence of its officers and employees. Larsen v. Independent Sch. Dist., 223 Iowa 691, 272 N. W. 632.

As stated in Smith v. City of Iowa City, 213 Iowa 391, 394, 239 N. W. 29, 31, ''The rule long established in this state is that a municipality, in the exercise of its purely governmental function, is not liable for negligence.'' However, the rule in this state, and the majority rule, is that the immunity of a governmental agency for liability for negligence in the exercise of governmental functions does not exempt it from liability for a nuisance created and maintained by it.

In Fitzgerald v. Town of Sharon, 143 Iowa 730, 732, 121 N. W. 523, 524, plaintiff brought suit for damages based upon trespass and nuisance. In affirming a judgment for damages, the opinion states:

''For the exercise of purely governmental functions a municipal corporation is not liable. * * * The creation and maintenance of a nuisance is very clearly not a governmental function, and the authorities are practically of one voice on the subject.''

In Hoffman v. City of Bristol, 113 Conn. 386, 389, 155 A. 499, 500, 75 A. L. R. 1191, 1193, the opinion states:

''Where a municipal corporation creates and maintains a nuisance it is liable for damages to any person suffering special injury therefrom, irrespective of whether the misfeasance or nonfeasance causing the nuisance also constituted negligence. This liability cannot be avoided on the ground that the municipality was exercising governmental functions or powers, even in jurisdictions where, as here, immunity is afforded from liability for negligence in the performance of such functions. 6 McQuillin on Municipal Corporations (2d Ed.) 815 et seq.; 43 Corpus Juris, p. 956.'' 7 R. C. L., Perm. Supp., 4896; 75 A. L. R. 1199; Harris v. City of Des Moines, 202 Iowa 53, 209 N. W. 454, 46

A. L. R. 1429, note; 56 C. J. 530, section 621; Bruhnke v. La-Crosse, 155 Wis. 485, 144 N. W. 1100, 50 L. R. A., N. S., 1147; Hagerman v. City of Seattle, 189 Wash. 694, 66 P. 2d 1152, 110 A. L. R. 1110; Heller v. Smith, (Iowa), 188 N. W. 878; Adams v. City of Toledo, 163 Ore. 185, 96 P. 2d 1078; Hansen v. Independent Sch. Dist., 61 Ida. 109, 98 P. 2d 959.

Section 12395, 1939 Code, defines nuisance. It reads:

"12395  Nuisance — what  constitutes — action  to  abate. Whatever is injurious to health, indecent, or offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and a civil action by ordinary proceedings may be brought to enjoin and abate the same and to recover damages sustained on account thereof."

Plaintiff offered the following evidence to sustain his contention that the playground was used.in a manner that caused continuous trespasses on his property and damages and essentially interfered with the comfortable enjoyment of life and his property.

Students played softball on the playground at lunch time, in the forenoon and in the afternoon. While plaintiff could not keep a record of all the balls batted or thrown onto his premises, the record kept by him from April 1937 to September 1939 shows there were over 200 trespasses observed by him during said period. In May 1940 school children entered on the premises 25 times to retrieve balls. On May 24th, there were 6 students running around on his property picking up balls. The students were instructed to retrieve the balls. Defendant furnished bats and balls for use by the students. Defendant, on complaint of plaintiff, raised the fence between the property from 8 feet high to 16 feet high, but this did not prevent invasion of plaintiff's property. Plaintiff was compelled to abandon his garden and flower beds because of continuous damage to them by trespassing students. Screens and windows were broken by balls batted by the students. The slate roof on his house was broken into pieces, some of which lodged in the spouting which caused the water to leak through the roof and caused serious damage to several rooms.

"Two bed rooms and two closets were ruined by rain coming through the plastering." Plaintiff was struck by a ball several times, the last time being about two months prior to this trial, and "I did not feel safe in my yard at any time they were playing ball." Plaintiff testified the situation detrimentally affected his health and interfered with the comfortable enjoyment of his property. We concur in the conclusion reached by the trial court that defendant created and maintained a private nuisance which caused plaintiff special damages for which defendant is liable.

Appellant relies primarily on the case of Spiker v. Eikenberry, 135 Iowa 79, 83, 110 N. W. 457, 458, 11 L. R. A., N. S., 463, 124 Am. St. Rep. 259, 14 Ann. Cas. 175; Casteel v. Town of Afton, 227 Iowa 61, 287 N. W. 245.

In Spiker v. Eikenberry, supra, plaintiff sought to enjoin defendant from allowing the premises to be used for playing of baseball and from retrieving balls from his premises. The games were played without the affirmative permission of the defendant. The lower court granted the injunction. The case was reversed because, as stated in the opinion:

"If persons without authority of the defendant, and without his consent, go upon his vacant lots and engage in acts which threaten injury or annoyance to plaintiffs, it would seem that the persons causing or threatening to cause such injury or annoyance are the persons to be complained of, and not the defendant. The rule applicable to such a case as this seems to us to be correctly expressed in this sentence from the opinion in Seastream v. New Jersey Exhibition Company, 67 N. J. Eq. 178 (58 Atl. 532): 'No responsibility cognizable in this court attached to the owners of the vacant lots who simply permitted any parties who chose to come along and play baseball there without any pecuniary profit to anybody except the common carriers who transported them.'"

However, the court further stated "And the evidence does not show that the game as played on defendant's lot has been so played as to constitute a nuisance", and recognized the rule that "Undoubtedly the owner of property may be required to keep

it in such condition as not to unreasonably interfere with the safety and comfort of those occupying the adjoining premises.''

In Casteel v. Town of Afton, supra, plaintiff asked for an injunction restraining defendant from maintaining a nuisance and continuing repeated trespasses. The allegations in the petition are similar to the claims of plaintiff in the instant case. The opinion, in referring to playground and athletic fields, 227 Iowa at page 65, 287 N. W. at page 247, states:

''They are not per se nuisances, though, like many other things, 'they can be so conducted as to become nuisances. As in many other instances, it is not so much the nature of the thing claimed to constitute a nuisance, as the manner of its use or treatment.''

In affirming the decree of the lower court denying an injunction, the court states, 227 Iowa at page 66, 287 N. W. at page 247:

''While the defendant in the case at bar appears to have affirmatively consented to the use of the lot, yet from the evidence as to the manner in which the games were conducted, the character of the attendance, and the slight evidence of injury to the adjoining premises from batted balls, we believe this is not a case where injunction should issue.''

In the instant case the use made of the playground manifestly constituted a private nuisance which caused substantial injury to the plaintiff.

II. The decree of the trial court awarding plaintiff damages in the sum of $300 should be and is sustained. However, we are of the opinion that the provisions of the decree restraining defendant from so conducting the games as to trespass upon plaintiff's property and from throwing and batting balls upon the premises and restraining students under the control and supervision of defendant from retrieving any balls from plaintiff's premises are too stringent and, to avoid contempt of the injunction, would compel defendant to prohibit the playing of softball or baseball on the playground. Defendant's obligation to plaintiff is to supervise and conduct the use of the playground in a manner that will not essentially interfere with comfortable

enjoyment of life and his property and avoid substantial injury to him, that is, games must be conducted in a manner that does not constitute a private nuisance. The decree should be modified accordingly. The playing of baseball on the playground is not a nuisance per se and plaintiff must submit to annoyances incidental to living close to the school premises and arising from a proper use of the playground. As stated by Hale, J., in Casteel v. Town of Afton, 227 Iowa 61, 65, 287 N. W. 245, 246, supra:

"Playgrounds and athletic fields, places of wholesome recreation, are undoubtedly of advantage to the health and well-being of a community, and more and more attention is being paid to their establishment and maintenance. They are generally considered desirable for the betterment of community life, in small as well as in large towns."

III. Appellee, in his cross-appeal, complains of the refusal of the trial court to enjoin defendant from "creating artificial dust storms" on the playground. On this issue, Mr. Roberts, secretary of the board of education of Sioux City, gave the following testimony:

"Dust on the playground is a great problem in Sioux City. The soil is powdery in nature and has no binder to it whatsoever. Some years ago we used cinders, but found that they were dangerous because of injuries to the children. We also tried coarse sand, but the sand would blow away with the wind. We then tried gravel, but we got reports of a large number of injuries to the children on account of the gravel. We also tried oil, but we found that that only made matters worse. The oil blew away with the dust and the oily dust was worse than the plain dust. We also used calcium chloride. Calcium chloride will help to keep soil compacted but is worthless on just dust. The playground at East Junior washes badly.

"A year ago, we sprinkled the soil once a week. There was no rain I believe from August 20 clear through 'till this spring.' "

We are satisfied defendant has done all that is reasonably possible to circumvent and overcome the natural soil conditions

778

on the playground and to prevent dust from accumulating to an unnecessary and unwarranted degree and that any use of the playground by the children will raise dust that will blow onto the plaintiff's premises when the wind is from the south.

To grant the injunction would require defendant to abandon the playground, which defendant, under the circumstances, is not required to do. The court was right in denying this part of plaintiff's prayer.—Modified and affirmed on appeal of the defendant; affirmed on plaintiff's cross-appeal.

HALE, C. J., and BLISS, GARFIELD, WENNERSTRUM, MILLER, MITCHELL, and OLIVER, JJ., concur.