467 So.2d 911 (1985)
Ernestine Lyndell ROBINSON and Frank Gardner
v.
INDIANOLA MUNICIPAL SEPARATE SCHOOL DISTRICT, et al.
No. 55863.
Supreme Court of Mississippi.
March 13, 1985.
Rehearing Denied May 15, 1985.
*912 Charles Victor McTeer, Willie L. Bailey, Wanda J. Turner, McTeer & Bailey, Greenville, for appellant.
Frank O. Crosthwait, Jr., Crosthwait, Noble & Terney, Indianola, Hubbard T. Saunders, IV, Crosthwait, Terney & Noble, Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and HAWKINS and SULLIVAN, JJ.
*913 SULLIVAN, Justice, for the Court:
Appellants Robinson and Gardner requested the Chancery Court of Sunflower County to enjoin the Indianola Municipal Separate School District from constructing a high school gymnasium across the street from their homes on the ground that it would constitute a public nuisance. The chancellor ruled that sovereign immunity barred injunctive relief against the School District and dismissed the action with prejudice. The questions presented for decision are whether sovereign immunity prohibits an action to be brought against a school district over its location and construction of a school building on school property, and, if not, whether the location of the gymnasium in question would constitute a public nuisance; and whether a school district is immune from municipal zoning regulations concerning off-street parking, and if not whether non-compliance would constitute an actionable nuisance.
This case arises from the ashes of the original 700-seat Gentry High School gymnasium built in 1958 and destroyed by fire in 1982. Plans to replace the old gymnasium with a 1500-seat combined gymnasium and auditorium, or gymnatorium, called for moving the location from the old site in the interior of the school grounds to a location on Battle Street directly across from the appellants' property. The School District approved the location and plans, and the superintendent and architect appeared before the City Planning Commission on account of discrepancies between the proposed project and city zoning ordinances. The Planning Commission approved the proposal but, three months later, Battle Street residents appeared before the Commission to present numerous objections to the proposal including devaluation of surrounding property, noise, traffic congestion, vandalism, trash and debris and inadequate parking. The Commission referred the citizens group to the School District; in the meantime, the School District obtained approval for the proposal from the State Educational Finance Commission and entered into a construction contract in December, 1983.
In April, 1984, the Battle Street citizens learned from a newspaper article that, despite the protests, construction would proceed on the gymnatorium on the Battle Street site. Appellants Robinson and Gardner filed a verified bill of complaint on April 16, 1984, for an injunction prohibiting the School District from proceeding with construction of the gymnatorium on the Battle Street site on the ground that it constituted an unlawful nuisance. Appellants also moved from a temporary restraining order or preliminary injunction pending a full hearing on the matters raised in the complaint. One week later, the Chancery Court heard arguments on the preliminary motion and denied all relief on the ground that an adequate remedy at law existed by way of appeal to the School Board's decision to the Circuit Court of Sunflower County. Instead, appellants filed a petition in this Court seeking reversal of the chancellor's denial of a temporary restraining order or preliminary injunction. This Court, per Justice Bowling, granted appellants' relief and ordered an immediate evidentiary hearing on the merits with no discovery.
The evidence at trial showed that the old Gentry High School gym was located about 350 feet from Battle Street, with a shop and band room located inbetween, acting as buffers to reduce noise, proximity and eye contact with the gym. The old parking area off Battle Street contained 35 to 40 parking spaces, with an additional 50 parking spaces off Battle Street on the site of the proposed new gymnatorium. Battle Street is a two-lane deadend street opening onto four-lane B.B. King Blvd.[1]
The location of the old gym in the interior of the school property made it difficult to control vandalism and the crowds attending games who congregated in front of the gym and in the parking lot on Battle Street several hundred feet away. The appellants testified that when the school hosted athletic *914 events, dances, or civic functions Battle Street suffered from heavy traffic congestion and severe parking problems because of the large crowds in attendance. Double-and-triple-parked cars blocked emergency services into Battle Street and blocked Battle Street residents into their homes. Noise levels were extremely high and loitering, littering, drinking and vandalism were constant problems. On one occasion, an ambulance was unable to pass through the traffic on Battle Street to reach an athlete injured at one of the high school ball games. At the 1984 Gentry High School graduation exercise, Battle Street was again completely blocked with cars parked four-deep. The proposed new gymnatorium would permit Gentry High School's athletic classification to be upgraded so that the school would play bigger schools with bigger crowds. In addition to the ten basketball games per year at the new gymnatorium there would be numerous practice games and weekend dances, as well as numerous school-related and civic social events throughout the year.
When the Indianola School District brought its proposed plan before the City Zoning Administrator, it was pointed out that the Indianola Zoning Ordinance § 559.7(j) required one parking space for each four seats in the main auditorium of a school or one space for each seventeen classroom seats, whichever is greater. Between 375 to 500 parking spaces would be required under the city ordinance for a gymnatorium seating between 1500 and 2000 people. The School District did not request nor was it granted a variance from this zoning ordinance requirement under § 301.1, ¶¶ 1 and 2(d). Although the School District did not comply with the parking requirement in the City Zoning Ordinance, it altered the distance that the gymnatorium would be set back from Battle Street to comply with the applicable city zoning ordinance.
After all the evidence was heard, the chancellor rendered a decision in favor of the School District on June 22, 1984. The chancellor reasoned that the School District is an agency of the state and exercises a governmental rather than a proprietary function in locating and constructing school buildings including a gymnasium. The chancellor concluded that the Board thus acts in a sovereign capacity, and is exempt from the enforcement of local laws or ordinances. The court ruled that the Indianola Zoning Ordinance, as far as a state agency is concerned, is advisory only because statutes or ordinances in derogation of sovereignty must be strictly construed in favor of the state in order that the state's sovereignty may not be narrowed or destroyed except by legislative acts or provisions of the constitution. The court concluded that, inasmuch as the School District's action in selecting the location and constructing the gymnatorium was a function which the legislature had specifically authorized a school district to perform, governmental immunity bars any cause of action for injunction to abate a nuisance arising from the location or construction of a school building.

I.

IS A CITIZEN'S NUISANCE ACTION TO ENJOIN A SCHOOL DISTRICT FROM LOCATING AND BUILDING A SCHOOL BUILDING ON A PARTICULAR SITE ON SCHOOL PROPERTY BARRED BY SOVEREIGN IMMUNITY?
The chancellor ruled that the school district's action in selecting a site for the gymnatorium was within the discretionary authority vested in it by law, so that it enjoys sovereign immunity from suit with respect to the action in question. The legislature has empowered school districts such as the appellee to designate the locations for school buildings and attendance centers in the school district subject to its jurisdiction and to change, alter, or abolish the location of such school buildings and attendance centers as may be required. Mississippi Code Annotated § 37-7-315 (1972). The same section provides that where a change or alteration to the location of a school building shall involve the construction of new school facilities, a municipal *915 separate school district must submit the proposal to the State Educational Finance Commission for approval.
Our landmark decision in Pruett v. City of Rosedale, 421 So.2d 1046 (Miss. 1982), abolishing sovereign immunity from tort liability for injuries caused by the state and its political subdivisions expressly retained intact the "... historical and well-recognized principle of immunity granted to all legislative, judicial and executive bodies and those public officers who are vested with discretionary authority ...". Id. at 1052. We noted that:
The reasonable man standard of tort law is not an appropriate measure for the political, social, or economic desirability of government programs and the methods selected for pursuing them. State tort standards cannot adequately control those governmental decisions in which, to be effective, the decision-maker must look to considerations of public policy and not merely to established professional standards or to standards of professional reasonableness.
Id. The principle of immunity from suit for governmental bodies vested with discretionary authority was carried forward in the legislative response to Pruett v. City of Rosedale, supra, the 1984 Immunity Act. Miss. Code Ann. § 11-46-1, et seq. (Supp. 1984). The legislature re-established the sovereign immunity of the state and political subdivisions from suits at law or in equity on account of tortious actions by the state or political subdivisions. Miss. Code Ann. § 11-46-3 (Supp. 1984). This immunity was waived as to claims for money damages arising out of the torts of such governmental entities within certain limitations. § 11-46-5 (Supp. 1984). The legislature expressly exempted governmental entities from liability, in § 11-46-9 (Supp. 1984), for any claim:
(c) Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused; ...
and
(m) Arising out of a plan or design for construction or improvements to public property, including but not limited to public buildings, ... where such plan or design has been approved in advance of the construction or improvement by the legislative body or governing authority of a governmental entity or by some other body or administrative agency, exercising discretion by authority to give such approval, and where such plan or design is in conformity with engineering or design standards in effect at the time of preparation of the plan or design.
Both our decision in Pruett v. City of Rosedale and the legislature's enactment of § 11-49-1 et. seq. (Supp. 1984) take effect after this complaint was filed. They are relevant to demonstrate that while this state has seen significant inroads into the doctrine of sovereign immunity in recent years, the immunity from suit of governmental bodies exercising discretionary authority has remained intact.
The appellants argue that no governmental body should be shielded by sovereign immunity from constructing and maintaining a nuisance. In City of West Point v. Womack, 178 Miss. 808, 174 So. 241 (1937), cited by appellants, this Court affirmed a damages award to a private citizen for injuries to his property resulting from the city's operation of a sewage ditch in a manner constituting a public nuisance. This case, appellants contend, shows that this Court has recognized that municipalities are not immune from suit where their operation of a facility constitutes a public nuisance. Also cited by appellant are cases from other jurisdictions in which an injunction or damages were allowed against a school district for creation or maintenance of a nuisance, even though done in the performance of a governmental function. Kreiner v. Turkey Valley Comm. Sch. Dist., 212 N.W.2d 526 (Iowa 1973), (sewage lagoon); Wayman v. Board of Education, 5 Ohio St.2d 248, 215 N.E.2d 394 (1966), *916 (dust from school parking lot); Ness v. Independent Sch. Dist. of Sioux City, 230 Iowa 771, 298 N.W. 855 (1941), (damages from baseball games); Stein v. Highland Park Independent Sch. District, 540 S.W.2d 551 (Tx.Civ.App. 1976), (trespass, littering, harassment, noise). The rationale common to these cases is that the state or its subdivisions have no greater authority to subject the public to a nuisance than does any private citizen.
Apart from City of West Point v. Womack, supra, the settled rule in Mississippi shields the state and its subdivisions from suits at law or in equity based on the exercise of discretionary governmental authority. We conclude that nothing in the recent developments of the law of sovereign immunity of this state manifests any intention to change this rule to permit private citizens to maintain an action against a governmental subdivision such as the school district to enjoin an alleged nuisance arising from the exercise of discretionary governmental authority. The chancellor was, therefore, correct in dismissing the action to enjoin a nuisance insofar as it related to the location and construction of a school building on school property. For this reason, we do not reach the question of whether the conditions of noise, vandalism, and loitering arising from the proposed gymnatorium would constitute a public nuisance. We note, however, that the appellants moved to Battle Street after the old gymnasium was constructed and that the old gymnasium created problems of the same kind, if not to the same degree, as those anticipated by the appellants with the new gymnatorium. The growth of Gentry High School and the concommitant increase in the problems typically endured by residents adjacent to a public school was not an unforeseeable development.

II.

DOES THE ZONING ORDINANCE OF A MUNICIPALITY GOVERNING OFF-STREET PARKING APPLY TO PUBLIC SCHOOLS?
The chancellor ruled that the Indianola City zoning ordinance was inapplicable to the construction of schools and facilities incidental thereto because the Indianola Municipal Separate School District is a governmental body with full authority to locate and construct schools and is not governed by local zoning regulation. Reliance was placed by the chancellor upon our decision in City of Jackson v. Mississippi State Building Commission, 350 So.2d 63 (Miss. 1977), in which we held that a municipal building code does not apply to the State Building Commission because the Commission possesses plenary sovereign power to construct buildings for state use unfettered by municipal regulation.
In Yates v. Mayor and Commissioners of City of Jackson, 244 So.2d 724 (Miss. 1971), we upheld a restriction in a municipal ordinance requiring provision for adequate off-street parking for property zoned for apartments and multiple family dwellings. We said:
It is generally recognized that zoning ordinances can, and should, provide for off-street parking to prevent street congestion. Under modern-day conditions any plan for the development of land must reckon with the parking problem, especially is this true in heavily populated areas. Off-street parking regulation comes within the delegation of zoning power to the city, and the city has the power to make reasonable regulations to prevent street congestion in the development of land.
Id. at 726.
In the case sub judice, the proposed new plan includes 53 permanent parking spaces with 40 additional temporary spaces off Battle Street. The Indianola off-street parking ordinance would require between 375 and 500 parking spaces to accommodate a capacity crowd of 1500-2000 at the proposed gymnatorium. The School District did not conform its off-street parking plans to the requirements of the ordinance, did not specify the required number of parking spaces in its application for a building permit, as required by the ordinance, *917 and finally did not follow the proper procedure for obtaining a variance from the off-street parking requirement, which includes public notice and hearing to obtain the views of the affected residents. Indianola Zoning Ordinance § 707.2 (1979).
City of Jackson v. State Building Commission, supra, correctly states the law as to the State Building Commission, but the school in question is not being built by the Commission. The municipal school district does not enjoy the plenary power in the construction of schools that was granted to the Building Commission. While the school district is empowered to locate and cause to be constructed school buildings to meet the needs of the district, Mississippi Code Annotated § 37-7-315 (1972), it must obtain the approval of the location, plans and specifications from the Educational Finance Commission to receive state and local funds for the construction of those facilities. Miss. Code Ann. § 37-47-15 (1972).
The school district is an arm of the sovereign with authority in site selection and planning, subject to the approval of the Educational Finance Commission. By the same token, the City of Indianola is also an arm of the sovereign with the right and duty to govern non-educational matters, including public safety. The condition and safety of the Indianola public streets, including Battle Street, is in the sovereign domain not of the municipal school district, but the city of Indianola.
We have previously upheld the application of municipal traffic ordinances in situations where other governmental authorities otherwise exercise plenary power. In City of Ellisville v. State Highway Commission, 186 Miss. 473, 191 So. 274 (1939), we ruled that a municipal parking ordinance controls a street that is part of a state highway. Since the regulation of traffic is an ordinary police power generally exercised by municipalities, we concluded that any legislative intent to take it away and confer it upon some other authority, such as the State Highway Commission, must be clearly expressed. Id. at 488, 191 So. at 277. The Indianola ordinance requiring Gentry High School to provide off-street parking proportional to its auditorium capacity is an otherwise valid exercise of the police power concerning traffic. Yates v. Mayor, etc. of Jackson, supra. The school district is not exempted from this requirement in the absence of a clear legislative intent to transfer that authority to the school district. Ellisville v. State Highway Commission, supra. The statutory grant of authority to the school district found in § 37-7-315 is plenary as to the location and construction of schools. This authority must yield, however, to the extent necessary to insure free flowing traffic. We hold, therefore, that Indianola zoning requirements for off-street parking apply to the school district and, specifically, the Gentry High School gymnasium addition. See School District of Philadelphia v. Zoning Board of Adjustment, 417 Pa. 277, 207 A.2d 864 (1965), (school district not immune from off-street parking ordinance).
The school district argues that the city granted a variance by virtue of the approval by the city planning board of the plans for the new gymnatorium. However, the city's own zoning ordinance requires public notice and hearing in order to validly grant a variance, a requirement that was not fulfilled. In Kynerd v. City of Meridian, 366 So.2d 1088 (Miss. 1979), we held that a city may not ignore, but must abide by, its own ordinance in granting an exception to a zoning requirement. The same is true where a variance is sought. Thus the Gentry High School addition is in violation of the Indianola off-street parking ordinance.
The question becomes whether this non-compliance with the off-street parking ordinance is a public nuisance which the appellants, as abutting land-owners, are entitled to enjoin. While it is generally acknowledged that the violation of a municipal ordinance does not constitute a public nuisance, the continuing violation of a valid ordinance may constitute a nuisance. Paramount Richards Theatres, Inc., et al. v. City of Hattiesburg, 210 *918 Miss. 271, 49 So.2d 574 (1950); 66 C.J.S. Nuisances § 9(b) pp. 749-50. A private individual cannot ordinarily maintain an action with respect to the enforcement of a zoning regulation, except where the use constitutes a nuisance per se or the individual has suffered or is threatened with special damage, i.e., injury or threat of injury of a special or peculiar nature amounting to a private wrong affecting his personal or property rights. Brooks v. City of Jackson, 211 Miss. 246, 51 So.2d 274 (1951); 101-A C.J.S. Zoning and Land Planning, § 344(b), pp. 1023-24.
The settled rule in this state is that an obstruction of an established highway is a public nuisance, and that a private person cannot maintain an action to abate an obstruction of a highway, unless such person has sustained some special damage or injury distinct or different in kind from that suffered by the public at large. Panhandle Oil Co. v. Trigg, 148 Miss. 306, 114 So. 625 (1927). An abutting owner is specially damaged when the obstruction not only prevents passage through the street, a general public interest, but also bars ingress and egress to his property. City of Jackson v. Welch, 136 Miss. 223, 101 So. 361 (1924). In other words, where an individual shows damage peculiar to himself as a result of obstructions otherwise constituting a public nuisance, he may maintain an action to enjoin said obstruction. Shoemaker v. Coleman, 94 Miss. 619, 47 So. 649 (1909); Coleman v. Holden, 88 Miss. 798, 41 So. 374 (1906).
The chancellor's findings of fact acknowledged that Battle Street was regularly beset with traffic problems during the athletic, school and social events at Gentry High School. The traffic congestion and parking problems have blocked Battle Street residents from access by car to or from their homes. Emergency vehicles, including fire, ambulance and police, face serious difficulty in serving either the school or the residents of Battle Street. Although the city and school have acknowledged the problem and have attempted to remedy it, the large graduation crowd, resulting in parking 4-deep on Battle Street, could not be stemmed.
We conclude under the foregoing authorities that appellants have alleged the existence of a public nuisance in the form of obstruction of Battle Street by traffic. This condition is directly traceable to the school district's non-compliance with the Indianola off-street parking ordinance. While it is true that ordinarily a private individual may not maintain a suit to enforce a zoning ordinance, nor may he enjoin what is in essence a public nuisance, where, as here, the condition obstructs an abutting landowner's right of ingress and egress, an injunction will lie. Under the established law, we are required to reverse the chancellor and issue an injunction barring the school district from proceeding with the construction of the Gentry High School gymnatorium unless and until it complies with the Indianola off-street parking ordinance.
REVERSED AND RENDERED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, PRATHER and ANDERSON, JJ., concur.
DAN M. LEE and ROBERTSON, JJ., not participating.

*919 APPENDIX

NOTES
[1] A diagram of Gentry High School and adjacent property is attached as Appendix 1.