PRATHER, Presiding Justice,
dissenting:
Finding the majority opinion to be in clear conflict with prior decisions of this Court, I respectfully dissent. In my view, the majority is incorrect in holding that the City of Jackson did not have standing to sue to enforce its local zoning laws and ordinances.
This Court noted in State ex rel. Moore v. Molpus, 578 So.2d 624, 632 (Miss.1991), that “[pjarties may sue or intervene when they assert a colorable interest in the subject matter of the litigation or experience an adverse effect from the conduct of the defendant, or as otherwise authorized by law”, (emphasis added) (quoting Harrison County v. City of Gulfport, 557 So.2d 780, 782 (Miss.1990)). Thus, in order to have standing, the City must merely show that it has some “colorable interest in the subject matter of the litigation.” It can not be validly argued that a City does not have a “colorable interest” in enforcing its zoning laws with regard to property within its city limits. Indeed, I find it hard to imagine a situation in which a city could have a greater interest than with regard to real property which is located in the heart of the city.
In addition to the “colorable interest” requirement, the City will be found to have standing if it can show that it has experienced an “adverse effect” from the conduct of the defendants or if the City’s cause of action is “otherwise authorized by law.” As will be seen, prior decisions of this Court have specifically granted the City authorization by law to bring the present action to enforce its zoning laws. Moreover, decisions of this Court indicate that a lenient standard of standing applies when parties seek to challenge governmental action in this State. In Fordice v. Bryan, 651 So.2d 998, 1003 (Miss.1995), this Court noted that:
Under article III, § 2 of the United States Constitution, the federal courts limit review to actual “eases and controversies.” Such restrictive language is not found in the Mississippi Constitution. “Therefore, we have been more permissive in granting standing to parties who seek review of governmental actions.” citing Van Slyke v. Board of Trustees, 613 So.2d 872, 875 (Miss.1993).
Based on this rather lenient standard, it is clear that the City does have standing to bring the present action to enforce its zoning laws.
Quite apart from the case law dealing with standing, this Court has entertained the appeals of municipalities on claims very similar to the present one on several occasions, and, in so doing, has impliedly accepted that said municipalities have standing to contest the actions of the state agencies in question. See City of Jackson v. Mississippi State Building Commission, 350 So.2d 63 (Miss.1977); City of Hattiesburg v. Region XII Commission on Mental Health and Retardation, 654 So.2d 516 (Miss.1995). Assuming, arguendo, that the issue of standing was not considered in those cases, the third basis for standing as set forth in Molpus is met in the present case, given that the rulings of this Court in Robinson v. Indianola Municipal Separate School Dist., 467 So.2d 911 (Miss.1991) and Hattiesburg expressly authorize municipalities to enforce reasonable zoning ordinances on state agencies.
*261 Molpus grants a plaintiff standing to sue where “otherwise authorized by law,” and this Court has clearly granted municipalities the right to enforce “reasonable zoning ordinances” in the courts of this State. It would be nonsensical for this Court to unanimously declare in Hattiesburg that a municipality has the right to enforce “reasonable zoning ordinances,” but to later find that the City of Jackson does not even have standing to bring such a suit in the present case. On trial below, the trier of fact could justifiably reach differing results with regard to the present case from those in Hattiesburg and Robinson, but there is no justification for finding that the City does not have the basic standing to attempt to assert its own zoning laws in a manner which this Court has specifically endorsed in the past.
The only basis on which the present ease could conceivably be distinguished from Robinson and Hattiesburg with regard to the standing issue is based on the fact that Miss. Code Ann. § 55-2S-5(a) (1989) provides that one of the five members of the Stadium Commission shall be appointed by the mayor of Jackson. The Commission argues that said fact indicates that the Legislature intended that the City’s sole voice with regard to the Commission should be through this appointment, and that the legislature thus intended that the City have no standing to contest the Commission’s actions. This argument, however, is totally devoid of any basis in law, statutory or otherwise.
There is nothing within Miss.Code Ann. § 55-23-5 which in any way addresses the issue of standing to sue, and it is quite clear that this rather lengthy statute was written to ensure that the Commission is composed of competent individuals and to ensure that the terms and responsibilities of said individuals are clearly set forth. A reading of this statute also reveals an attempt to ensure a geographically and politically diverse Commission, with two of the members being required to come from outside Hinds county, one required to be appointed by the Governor from within Hinds County, and one member to be selected by the Board of Trustees of Higher Learning.
It is in this context that the requirement that one of the members come from Jackson and be appointed by the mayor is set forth, and not by any stretch of the imagination in the context of the City’s standing to sue. Under the rationale of the Commission, the State of Mississippi, the Board of Trustees, and Hinds County would be all precluded from having standing to sue the Commission based on the fact that they are provided with representation on the Commission. The remainder of § 55-23-5 is concerned with such matters as the compensation, terms of tenure, and qualifications of the commission members. Any legislation purporting to deny a municipality the standing to sue to enforce its own zoning ordinances would likely be unconstitutional, but there is no indication that § 55-23-5 was in any way intended to limit the City’s standing to sue.
Having stated that I consider the City of Jackson to have standing, the question then arises as to whether the lower court was correct in dismissing the five counts of the City’s complaint. A holding by this Court that the City has standing to sue would not serve to revive the case, given that the lower court also dismissed all of the Counts in the City’s complaint on bases unrelated to considerations of standing.
The City set forth a number of legal theories for challenging the actions of the Commission with regard to the lease in question. Count I asserts that the Project Development Agreement (“project”) is unconstitutional as a violation of the separation of powers as set forth in Article 1, Section 1 of the Mississippi Constitution. Count III asserts that the “aforementioned legislation” (presumably referring to Miss.Code Ann. § 55-23-11) is “invalid and unconstitutional in its application” as an “alienation” of property held “in trust for the public”. Count IV asserts that the project in question involves a “joint venture” between a “public body and a private interest, thereby rendering said agreement void as it is contrary to public policy and laws of the State of Mississippi”. Count V merely states that “Plaintiff further charges that there is no adequate remedy at law, and unless this Honorable Court intervenes in their behalf, they will, as citizens *262 and taxpayers, and members of the public in general, sustain injury and damage, as aforesaid.”
The City cited no case law precedent before the trial court with regard to the aforementioned issues, and the City’s brief before this Court does not even address these issues on appeal. Accordingly, the lower court should be affirmed with regard to the dismissal of these Counts.
With regard to Count II, the lower court did not hold that said count failed to state a claim upon which relief might be granted, but rather dismissed this count as being barred by the doctrine of sovereign immunity. In Count II, the City asserts that the project, if allowed to be completed, would constitute a “foreseeable danger” to the surrounding community, both physically and aesthetically, and would violate the zoning ordinances of the City of Jackson. In granting the State’s motion to dismiss, the lower court apparently accepted the State’s argument in its memorandum in support of dismissal, wherein it argued that Miss.Code Ann. § 11 — 46—3 precluded the City from recovering under Count II on the basis of the doctrine of sovereign immunity.
The State’s argument and the lower court’s basis for dismissal, however, were both directly refuted by this Court in Robinson and Hattiesburg. In Hattiesburg, the Mental Health Commission similarly argued that the City of Hattiesburg was barred by the doctrine of sovereign immunity from enforcing its zoning ordinances and building codes on the Mental Health Commission, given that said commission was a “subdivision of the state of Mississippi.” Hattiesburg, 654 So.2d at 517. This Court rejected this argument, noting that we had held in Robinson that:
[T]he city was also an arm of the sovereign, with the right and duty to govern non-educational matters, including public safety and, therefore, it could enforce its off street parking ordinance with respect to the school district property, (citing Robinson, 467 So.2d at 917). Thus, Robinson stands for the proposition that although it is recognized that both authorities are vested with some powers regarding construction and the selection of building sites, reasonable zoning restrictions aimed at public safety and the elimination of public nuisances may be enforced. The chancery court erred in concluding otherwise.
Hattiesburg, 654 So.2d at 518.
Robinson and Hattiesburg are directly on point and leave no doubt whatsoever that Count II of the City’s complaint is not barred by the doctrine of sovereign immunity. Moreover, as discussed earlier, the fact that this Court not only considered, but also granted, very similar appeals from two other municipalities clearly indicates that this Court did not find said cities to lack standing to bring the complaints in question. Accordingly, I would reverse the lower court with regard to the finding that the City did not have standing and with regard to the dismissal of Count II and remand to the lower court for trial on Count II of the City’s complaint.
Having stated my opinion that Robinson and Hattiesburg are controlling in the present case with regard to the issues of standing and sovereign immunity, I wish to emphasize that I neither endorse nor oppose a similar result being reached in the present case on remand as was reached in the aforementioned cases. Further, as discussed below, past decisions of this Court illustrate that the majority’s opinion is in fact based on considerations which are relevant in a trial on the merits of the ease, rather than on appeal from the granting of a motion to dismiss.
This Court’s holding in Robinson served to limit this Court’s finding in City of Jackson v. MS State Building Commission (that the Building Commission had been granted plenary power by statute and did not have to follow municipal ordinances) to the facts of said case. Robinson, 467 So.2d at 917. Robinson, however, obviously did not preclude this Court or a lower court from finding in the future that the legislature has granted plenary power to a given state agency. This Court stated in Robinson that:
The municipal school district does not enjoy the plenary power in the construction of schools that was granted to the Building Commission. While the school district is *263 empowered to locate and cause to be constructed school buildings to meet the needs of the district, ... it must obtain the approval of the location, plans, and specifications from the Educational Finance Commission to receive state and local funds for the construction of those facilities. Id.
Thus, Robinson stands in part for the proposition that not all state agencies acting pursuant to statutory authority have plenary power, but this Court did not hold in said opinion that the Building Commission is the only state agency that may be vested with plenary power.
Even assuming that a state agency does have plenary power, Hattiesburg indicates that the rather stringent holding in City of Jackson v. MS State Building Commission that the Building Commission did not have to comply in any manner with local zoning ordinances, reasonable or otherwise, only has precedential value with regard to that commission. Nothing in Hattiesburg, however, indicates that this Court considers issues regarding plenary power to be irrelevant in determining whether or not a given zoning ordinance should be enforced on a state agency. I would note that, in Hattiesburg, the Mental Health Commission was granted power to choose facilities in areas which the State had no ownership interest and the location of which were unknown to the legislature. As such, this Court was not faced with a specific legislative grant of power with regard to specific, state-owned property as in the present ease.
I would submit that, in cases in which a state agency has been found to have been granted plenary power, municipal laws and zoning ordinances should be enforced against said agency only if enforcement thereof would not be inconsistent with the intent of the legislature as expressed in the statute. This Court in Hattiesburg rightfully backed away from the complete deference shown to state statutes in City of Jackson v. MS State Building Commission, but municipal zoning ordinances should nevertheless not be enforced against a state agency if the enforcement thereof would unduly interfere with the agency’s exercise of plenary power as specifically set forth in a state statute.
A zoning ordinance which is “reasonable for ordinary purposes should nevertheless not be enforced against a state agency which has been granted plenary power if its enforcement would be in direct contravention of a state statute or of the intent of the legislature in passing said statute. At the same time, I see no reason why those state agencies which are granted plenary power should not be obligated to comply with reasonable local ordinances so long as compliance with said ordinances is consistent with the intent of the legislature in granting said plenary power.
In reading the majority opinion, it appears that the majority shares at least some of the views expressed above. In setting forth their opinion, the majority held that:
We find that the City lacked the proper requirements of standing to pursue this action as it is in contravention of the intent of the legislature in promulgating specific legislation regarding the stadium and affirm the trial court on that basis.
Given the “full power” granted to the Commission by § 55-23-11 with regard to leasing specific, state-owned property, I share the majority’s conclusion that the City may be precluded from enforcing the zoning laws in question. The City should only be so precluded, however, if it is so determined in the context of a trial on the merits based on the case law set forth by this Court in Robinson, Hattiesburg, and similar cases. A finding that the City’s enforcement of its zoning laws is contrary to the intent of the legislature in granting the Commission plenary power would be a basis for the Commission’s prevailing on the merits of the case below. It is emphatically not, however, a basis for denying the capital city of this State the basic standing to come into court and attempt to enforce its own zoning laws within its own city limits in a manner in which this Court has repeatedly authorized municipalities to do. Accordingly, I dissent.
DAN M. LEE, C.J., and BANKS and MILLS, JJ., join in this opinion.