# WATSON CONSTRUCTION COMPANY v. CITY OF ST. PAUL.

109 N. W. (2d) 332.

May 12, 1961—No. 38,141.

*Carlsen, Greiner & Law,* for appellant.

*Robert J. Swords,* Corporation Counsel, and *Donald L. Lais,* Assistant Corporation Counsel, for respondent.

MURPHY, JUSTICE.

This appeal derives from an action instituted by the Watson Construction Company to recover a permit fee in the amount of $5,278.25 paid to the city of St. Paul in connection with the construction of the Centennial Office Building. The court made findings for the defendant city and ordered that judgment be entered accordingly. The plaintiff appeals from the order of the court denying its motion for a new trial.

The plaintiff corporation was awarded a contract by the State of Minnesota through its Department of Administration to construct a

new state office building, designated as the Centennial Office Building, on property owned by the state but located within the city limits of St. Paul. The contract was for general construction work and did not include separate contracts for electrical, mechanical, ventilation, and other work. The issue before us turns upon the effect of the following provisions of the company's contract with the state relating to permits and licenses:

*"Each contractor shall take out building permits and licenses and pay for same as required by the City of St. Paul Building Code* and State of Minnesota laws for comparable work performed on private building projects. Where codes provide that the owner shall take out and pay for permits, each contractor shall perform these duties for the State and include the cost of the same in his proposals." (Italics supplied.)

The permit fee provided for in the foregoing provision was paid by plaintiff contractor under protest. As a basis for its recovery of the amount so paid, the plaintiff asserts that it is beyond the police powers of a municipality to require a building permit for the construction of a state building; that the Department of Administration of the State of Minnesota could not lawfully require plaintiff by contract to obtain and pay for building permits from the municipality in which the building project is situated; that plaintiff is entitled to a return of the money because the fee was paid under protest; and that it is not precluded from obtaining such return although the amount was not included as a cost in its bid.

It is not denied by the plaintiff that payment of the permit fee was a condition of the contract, and we may further assume that the plaintiff would agree that it was at liberty not to submit a bid if it did not wish to comply with the conditions contained in the proposals submitted to it. Whether or not other contractors who competed for the job included this item in their bids does not appear from the record. The plans and specifications for the building were prepared by the state architects and engineers. During the preliminary planning stages of the project they held conferences with representatives of the city of St. Paul, and the final plans of the building were examined by the city officials.

In support of its contention that the exaction of the permit fee was unlawful, the plaintiff relies on City of Milwaukee v. McGregor, 140 Wis. 35, 121 N. W. 642, and Nelson v. McKenzie-Hague Co. 192 Minn. 180, 256 N. W. 96, 97 A. L. R. 196. The former case was an equitable action in which the plaintiff city sought to enjoin the State of Wisconsin, acting through its Board of Normal School Regents and their contractors and architect, to prevent continuation of the erection of a school building which had been partially constructed. It was claimed by the city that without a building permit issued pursuant to its ordinances such construction project would be unlawful. The court there held that the building ordinances of the municipality requiring supervision as to the manner of constructing, altering, or repairing buildings had no application to state buildings. The decision did no more than to affirm the well-recognized principle that the property of the state is exempt from municipal regulation in the absence of waiver on the part of the state of its right to regulate its own property. The most recent authority in which this subject is discussed is Board of Regents of Universities, etc. v. City of Tempe, 88 Ariz. 299, 356 P. (2d) 399, which held that the city could not apply its building codes and regulations to the construction and maintenance of state university buildings, even though the university was located within the city. The reason for this holding is that the general police power of a municipal corporation may not interfere with the sovereign power of the state in the exercise of its governmental functions, unless such immunity is waived.

Nelson v. McKenzie-Hague Co. *supra,* was a tort action involving another facet of sovereign immunity. In that case the defendant, a contractor who was engaged in the construction of a bridge for the State of Minnesota, was sued for damages growing out of an alleged nuisance. The circumstances giving rise to the action arose from the performance of work necessary to the completion of the contract. We held there that the defendant was not guilty of a statutory private nuisance since it was proceeding (192 Minn. 182, 256 N. W. 97) "in a lawful manner to perform a duty owing to the sovereign state." The court pointed out that highways are built by the state itself in its

capacity as a sovereign; that it is the legal duty of the contractor to perform his contract; and that the contract makes the contractor (192 Minn. 183, 256 N. W. 98) "the agent of the state and clothes him with something more than mere authority to proceed."

Both of these authorities relied on by plaintiff are clearly distinguishable. In the case before us there is no dispute between the state and the municipality. It may be conceded that, if the state had in the preparation of its contract omitted the requirement relating to the payment and procurement of a permit or had indicated that the provisions of the municipal building code were not to be observed, a permit from the city would have been unnecessary and the fee therefor could not have been lawfully collected. However, in the suit before us the plaintiff is attempting to recover from the city a sum of money which it, by its contract, agreed to pay. Under the circumstances it cannot be said that the municipality is interfering with the sovereign powers of the state by issuing a permit pursuant to the provisions of the state contract. We have been cited to no authority which would lead us to the conclusion that by requiring its contractor to take out a building permit the state has divested itself of the essential attributes of its sovereignty and its governmental powers. There is no reason why the state may not, in addition to the supervision and inspection provided by the architects and other officers of the state, utilize the supervisory and inspection services of the department of the city which administers its building code. It may be assumed from the record that such was the intention of the State of Minnesota, acting through the Department of Administration. From the stipulation of facts it appears:

"That plans and specifications for said State Office Building were prepared by Thorshov & Cerny, Inc., the State's architects and Engineers on said project. That the architect for the Defendant City during the preliminary planning of said Office Building had eight (8) to ten (10) conferences with the State's architects and engineers. The final plans of the building were checked and examined by interested departments of the defendant City.

\* \* \* \* \*

"* * * That the Defendant City has on frequent occasions inspected the building during construction, both as to Plaintiff's work and to the work of the State's other contractors."

The requirement that the contractor secure and pay for the building permit was a condition which the state could properly include in the contract as one under which the work should be done. It does not necessarily follow that, since this condition imposed upon the contractor the requirement to comply with the ordinances of the city, the state by imposing the condition surrendered its sovereign rights and created a burden upon the public. On the contrary, we can only assume that an additional benefit would accrue to the state from subjecting the contractor to the additional inspection and supervision of the city architect. Since there is no conflict here between the state and the municipality and the permit requirement of the contract has placed no burden upon the state, it cannot be said that the issue of state sovereignty is in any way involved.

While Nelson v. McKenzie-Hague Co. *supra,* contains an interesting discussion of the principle of sovereign immunity, we find nothing in it which would lend support to the plaintiff's claims. In that case the government contractor was exposed to liability in the carrying out of his contract with the state because of an asserted hazard which was apparently neither considered nor foreseen. The situation there is entirely different from the one before us. The contractor here, before entering upon his work, undertook to assume an obligation which he now seeks to avoid. Moreover, the last paragraph on this topic in the Nelson case makes it clear that the sovereign immunity of the state does not inure to the benefit of its contractor.

Affirmed.

MR. JUSTICE THOMAS GALLAGHER took no part in the consideration or decision of this case.

MR. JUSTICE OTIS, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.