350 So.2d 63 (1977)
CITY OF JACKSON, Mississippi
v.
MISSISSIPPI STATE BUILDING COMMISSION and Frank J. Rooney, Inc.
No. 50252.
Supreme Court of Mississippi.
September 28, 1977.
John E. Stone, W.T. Neely, Jackson, for appellant.
A.F. Summer, Atty. Gen., by P.L. Douglas, First Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, SUGG and WALKER, JJ.
SUGG, Justice, for the Court:
This appeal is from a final decree of the Chancery Court of the First Judicial District of Hinds Court which (1) enjoined the City of Jackson from requiring the State Building Commission or its contractor, Frank J. Rooney, Inc., to obtain a building permit from the City and to pay a permit fee for construction of a building by Rooney for the Commission, and (2) allowed the Commission to recover $13,454 paid into the registry of the court by it.
The Commission filed a bill of complaint and alleged that the City demanded that its contractor, Rooney, obtain a building permit *64 and pay a building permit fee of $13,454; that it withheld payment of $13,454 to Rooney but tendered that amount into the registry of the chancery court.
The Commission further alleged that it is an agency of the state created pursuant to section 31-11-1 et seq., Mississippi Code Annotated (1972) and was authorized to construct a building for the school of dentistry for the University of Mississippi Medical Center in the City of Jackson.[1] The Commission prayed that the City be enjoined from requiring its contractor to obtain a building permit for the construction of its building and pay a fee therefor.
The City answered and admitted that the Commission was authorized to construct the building; that the defendant Rooney was awarded a contract to construct the building; and, that it had sought to require Rooney to obtain a building permit for the construction and pay a fee of $13,454 for the issuance of the permit.
The City made its answer a cross-bill and alleged that it adopted a building code as authorized by section 21-19-5 Mississippi Code Annotated (1972). The City further alleged that the purpose of the building code was:
[T]o provide minimum requirements to safeguard the lives, health and general welfare of the citizens of the City and to protect property within the applicable jurisdiction by securing structural strength, stability, sanitation, adequate light and ventilation and safety to life and property from fire and other hazards incident to the construction, alteration, use and occupancy of buildings and structures.
The City further alleged that its building code requires every contractor proposing to erect or construct a building within its jurisdiction, (1) to make application to the Director of its Building and Permit Department for the issuance of a separate building permit for each structure, (2) to submit copies of the plans and specifications for the proposed work, (3) to obtain the department's approval thereof, and (4) to pay a prescribed fee before commencing construction. It alleged that Rooney began construction in violation of the provisions of the building code and prayed that it be awarded $13,454 for the permit fee.
In its final decree the court issued an injunction enjoining the City from enforcing its building code against the State and ordered the clerk to refund to the Commission the $13,454 paid into the registry of the court by it.
The issue in this case is: Does the building code of a municipality requiring a building permit and prescribing a fee for the building permit apply to buildings to be erected for the State by the State Building Commission?
It is well settled by our decisions that statutes in derogation of sovereignty should be strictly construed in favor of the State so that its sovereignty may be upheld, and not narrowed or destroyed except by specific provisions. In Coleman v. Whipple, 191 Miss. 287, 2 So.2d 566 (1941) this Court stated:
By resorting merely to well-known principles of statutory construction, it is evident that the State may not be restricted in its sovereignty except by the specific provisions of its statutes. Josselyn v. Stone et al., 28 Miss. 753; Turner v. City of Hattiesburg, 98 Miss. 337, 53 So. 681; Feemster v. City of Tupelo, 121 Miss. 733, 83 So. 804; State Teachers' College v. Morris, 165 Miss. 758, 144 So. 374; Sedgwick, Construction of Statutory and Constitutional Law (1874 Ed.), p. 337.
In Josselyn v. Stone, supra, the Court said: `It is the settled doctrine that the general words of a statute do not include *65 the State, or affect her rights, unless she be specially named, or it be clear and indisputable from the act that it was intended to include the State.' It was further held in City of Jackson v. State, 156 Miss. 306, 126 So. 2, 4: `It is undoubtedly the general rule that, where the effect of a statute is to restrict the rights of, or impose liabilities upon, the state or its political subdivisions, it will be held to be inapplicable to them, unless they are included expressly or by necessary implication.' See also 59 C.J. 1103, Sec. 653. (191 Miss. at 298, 299; 2 So.2d at 568).
We held in Gulf & S.I.R. Co. v. Laurel Oil & Fertilizer Co., 172 Miss. 630, 158 So. 778 (1935) the following:
In 59 C.J., section 663, it is said: `Statutes in derogation of sovereignty should be strictly construed in favor of the state, so that its sovereignty may be upheld and not narrowed or destroyed, and should not be permitted to divest the state or its government of any of its prerogatives, rights or remedies, unless the intention of the Legislature to effect this object is clearly expressed.' (172 Miss. at 648, 158 So. at 782).
In Potter v. Fidelity & Deposit Co., 101 Miss. 823, 58 So. 713 (1911) we said:
When the state's sovereignty is involved in any statute, statutes in derogation thereof are to be strictly construed in favor of the state; that is to say, the state's sovereignty is to be broadened and upheld, and not narrowed or destroyed, when the courts are called upon to construe a statute infringing upon sovereign power. (101 Miss. at 827, 58 So. at 715).
The City adopted a building code pursuant to the authority granted by section 21-19-25 Mississippi Code Annotated (1972) which reads in part as follows:
Any municipality within the State of Mississippi may, in the discretion of its governing authorities, adopt building codes, plumbing codes, electrical codes, gas codes, sanitary codes, or any other codes dealing with general public health, safety or welfare, or a combination of the same, by ordinance, in the manner herein prescribed.
The language of section 21-19-25 does not expressly, or by implication, subject buildings erected by the State to building codes enacted pursuant thereto, neither does it give municipal corporations the power to require the State to obtain and pay a fee for a building permit. To the contrary section 31-11-3 Mississippi Code Annotated (1972) expressly grants the State Building Commission authority to erect state buildings, make inspections, prepare plans and specifications, and supervise the erection of state buildings. It is not reasonable to assume that the legislature, by enacting section 21-19-25, intended to diminish the authority of the Commission contained in section 31-11-3 and give municipalities the power to narrow or destroy the state's sovereignty with respect to its own buildings. Section 31-11-3 reads in part as follows:
The commission, for the purpose of carrying out the provisions of this chapter, in addition to all other rights and powers granted by law, shall have full power and authority to employ and compensate such architects or other employees necessary for the purpose of making inspections, preparing plans and specifications, supervising the erection of any buildings, and making any repairs or additions as may be determined by the commission to be necessary. Said commission shall have entire control and supervision of, and determine what, if any, buildings, additions, repairs or improvements are to be made under the provisions of this chapter.
(a) The commission shall have full power to erect buildings, make repairs, additions or improvements, and buy materials, supplies and equipment for any of the institutions or departments of the state. In addition to other powers conferred, the commission shall have full power and authority as and when directed by the legislature, or when funds have been appropriated for its use for such purposes, to:
.....

*66 (2) Build suitable plants or buildings for the use and housing of any state schools or institutions, including the building of plants or buildings for new state schools or institutions, as provided for by the legislature;
.....
The foregoing statute delegates plenary power to the Commission to construct state buildings. Such grant of specific power denies contrary power. If the legislature had intended the Commission or its contractors to submit plans and specifications for the construction of buildings and pay fees to municipalities for building permits, then such requirement would have been expressly stated therein. The building code of the City must therefore yield to the sovereignty of the State.
Our holding on this question is in accord with authority in other jurisdictions. City of Milwaukee v. McGregor, 140 Wis. 35, 121 N.W. 642 (1909) and Paulus v. City of St. Louis, Mo. App., 446 S.W.2d 144 (1969) decided the identical issues present in our case. The issue before the Supreme Court of Wisconsin in City of Milwaukee v. McGregor was whether the provisions of the charter of the City of Milwaukee and ordinances regulating the construction of buildings in Wisconsin applied to a public school building to be erected for the state by virtue of special legislative authority. The Supreme Court of Wisconsin stated:
So the question comes down to whether the ordinary charter and ordinance regulations of a city requiring submission to local supervision, as regards the manner of constructing, altering and repairing buildings, have any application to state buildings. That must be answered in the negative. It is plainly so ruled by the familiar principle that statutes, in general terms, do not apply to acts of the state. Moreover, express authority to a state agency to do a particular thing in a particular way supersedes any local or general regulation conflicting therewith. Sandberg v. State, 113 Wis. 578, 89 N.W. 504; Dollar Savings Bank v. United States, [19 Wall. 227-239] 86 U.S. 227-239, 22 L.Ed. 80; United States v. Verdier, 164 U.S. 213-219, 17 S.Ct. 42, 41 L.Ed. 407; District of Columbia v. Johnson, 165 U.S. 330, 17 S.Ct. 362, 41 L.Ed. 734.
The infirmity of appellant's position has been, from the first, in supposing that the state, in respect to constructing a building in the city of Milwaukee, has no more free hand than a private person or corporation, while the fact is that the people of the state in their sovereign capacity, except as restrained by some constitutional limitation, and there is none in this case, is as exempt from mere general or local laws as the king was of old in the exercise of his sovereign prerogatives as `universal trustee' for his people. So it has been said, `The most general words that can be devised (for example, any person or persons, bodies politic or corporate) affect not' the sovereign `in the least, if they may tend to restrain or diminish any of his rights and interests.' So general prohibitions, either express or implied, apply to all private parties but `are not rules for the conduct of the state.' (140 Wis. at 37, 121 N.W. at 642, 643).
One of the issues in Paulus, supra, was whether the City of St. Louis could collect a building permit fee from a contractor who was constructing a building for the State of Missouri. The Court stated:
The issues herein distill into the question of whether the State has by legislation or by its contract with plaintiff empowered the City to impose the permit fee on plaintiff. We first inquire whether legislation thus empowered the City. On this, we turn to the well-established principle that an ordinance does not apply to a state with reference to its own property unless the charter expressly gives the city authority to bind the state or the state waives its right to regulate its property. See: McGregor, supra, 121 N.W. l. c. 643; New Jersey Interstate Bridge and Tunnel Comm. v. Jersey City, 93 N.J. Eq. 550, 118 A. 264, 266-267 (city may not compel state or its general contractor to take out a permit); City of Medford v. *67 Marinucci Bros. & Co., Inc., 344 Mass. 50, 181 N.E.2d 584, 587; Township of Springfield v. New Jersey State Highway Dept., 91 N.J. Super. 567, 221 A.2d 766, 775; Davidson County v. Harmon, 200 Tenn. 575, 292 S.W.2d 777, 781; Kentucky Institution, etc. v. City of Louisville, 123 Ky. 767, 97 S.W. 402, 403-404; City of Atlanta v. State, 181 Ga. 346, 182 S.E. 184, 185; Ex parte Means, 14 Cal.2d 254, 93 P.2d 105, 107; Board of Regents, etc. v. City of Tempe, 88 Ariz. 299, 356 P.2d 399, 406; Watson Const. Co. v. City of St. Paul, supra [260 Minn. 166, 109 N.W.2d 332]. The state and its agencies are not within the purview of a statute unless an intention to include them is clearly manifested, especially where prerogatives, rights, titles, or interests of the state would be divested or diminished or liabilities imposed on it. Hayes v. City of Kansas City, 362 Mo. 368, 241 S.W.2d 888, 892.
.....
It is not reasonable to assume that the legislature intended to grant or delegate to the City the power and authority to override the State's sovereign prerogative. See Harmon, supra. To permit the City to graft its own building code onto such legislative requirements would introduce a potential element of discord and confusion into an area where the public interest of all the people of the State is so directly and importantly involved. Kaveny v. Bd., etc., of Montclair, 71 N.J. Super. 244, 176 A.2d 802, 804.
.....
Central authorities such as the Department and the Chief, responsible to state officials rather than to officials of each municipality, are appropriate for the efficient, uniform, and orderly administration of the State's system of planning and erecting state buildings responsible to the needs of all of the people of the State. City of Tempe, supra, 356 P.2d l.c. 407; Kaveny, supra, 176 A.2d l.c. 803.
They will, without any local control, plan for and supervise the construction of state buildings with no less concern for the soundness and safety of the building than the local municipality. They may follow desirable local building specifications, without requiring that the contractor (and, therefore, the State indirectly) pay a substantial building permit charge to the City. (446 S.W.2d at 150, 151, 152, 153).
For the reasons stated, we affirm.
AFFIRMED.
PATTERSON, C.J., INZER and SMITH, P. JJ., and ROBERTSON, WALKER, BROOM, LEE and BOWLING, JJ., concur.
NOTES
[1] Miss.Gen.Laws Ch. 388 (1973) directed and authorized the board of trustees of state institutions of higher learning to establish a school of dentistry at Mississippi Medical Center in Jackson and directed and authorized the State Building Commission to provide suitable state owned land or land acquired by gift and buildings to house the school of dentistry.

Miss.Gen.Laws Ch. 266 § 7(s) (1974) appropriated $8,313,233 for construction of dental school.