IN THE SUPREME COURT OF MISSISSIPPI
NO. 94-CA-00555-SCT

*CITY OF JACKSON, MISSISSIPPI*

*v.*

*STATE OF MISSISSIPPI AND THE MISSISSIPPI VETERANS MEMORIAL STADIUM COMMISSION, MISSISSIPPI STATE DEPARTMENT OF FINANCE AND ADMINISTRATION AND M. BENNETT CHOTARD*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/05/94 |
| TRIAL JUDGE: | HON. WILLIAM F. COLEMAN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JANE E. TUCKER |
| | WILLIAM A. GOWAN, JR. |
| ATTORNEYS FOR APPELLEES: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: RICKEY T. MOORE |
| | MARK D. MORRISON |
| | GENE D. BERRY |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 6/13/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/8/96 |

**BEFORE SULLIVAN, P.J., McRAE AND ROBERTS, JJ.**

**ROBERTS, JUSTICE, FOR THE COURT:**

**INTRODUCTION**

¶1. The case before the Court today involves a dispute over the ability of the City of Jackson, Mississippi to enforce local zoning ordinances upon state owned land, Mississippi Veterans Memorial Stadium, located within the city limits where the legislature has specifically promulgated legislation regarding the use of said state property. See Miss. Code Ann. Section 55-23-11. We agree with the circuit court's holding that the City lacked standing to bring the declaratory judgment involved in this case. We find that the City lacked the proper requirements of standing to pursue this action as it is in contravention of the intent of the legislature in promulgating specific legislation regarding the stadium and affirm the trial court on that basis. Accordingly, we need not address the other issues.

**STATEMENT OF THE CASE**

¶2. The procedural history of this case began with the filing of Mayor Kane Ditto's [hereinafter the City] five count Complaint For Declaratory Relief And Other Relief in the Circuit Court of the First Judicial District of Hinds County, Mississippi against the State of Mississippi, the Veterans Memorial Stadium Commission [hereinafter Commission], Mississippi State Department of Finance and Administration and M. Bennett Chotard [hereinafter Chotard]. Said Complaint was filed in his official capacity as Mayor of the City of Jackson, Mississippi and on behalf of the citizens of Jackson, Mississippi as interested parties and taxpayers of the State of Mississippi.

¶3. The lawsuit sought declaratory relief primarily concerning the rights of the City of Jackson to enforce zoning ordinances on land which was the subject of a Project Development Agreement [hereinafter Agreement] between the Mississippi Veterans Memorial Stadium Commission and M. Bennett Chotard. Specifically, the Complaint contained five counts. Count I alleged that the Agreement violated the Separation of Powers Doctrine. Count II alleged that if the Agreement was allowed to proceed, the citizens of Jackson would be adversely affected because (a) a foreseeable danger to the health and safety of persons traveling on the streets or otherwise operating their vehicles upon the subject property in the areas of North State Street would constitute a hazard and nuisance; (b) a foreseeable erosion and destruction of the aesthetic quality of the environment surrounding the Stadium would occur; and (c) violation of the City zoning ordinances. Count III alleged that Miss. Code Ann. § 55-23-11 is unconstitutional in violation of Article 4 § 90 of the Mississippi Constitution of 1890. Count IV alleged that the Agreement was a joint venture or partnership between the parties and thus void as contrary to public policy prohibiting such between a public body and private interest. Count V was that unless the trial court intervened, there was no adequate remedy at law to prevent the general public, as citizens and taxpayers, from injury and damage.

¶4. The Commission and Chotard filed a Motion to Dismiss the City's complaint for failure to state a claim upon which relief could be granted and as barred by the doctrine of sovereign immunity. A Memorandum in support thereof was filed by Chotard, which the City opposed.

¶5. Upon considering the briefs and argument of both parties, Judge William F. Coleman entered his Judgment of Dismissal which reads as follows.

> THIS CAUSE came for hearing on March 14, 1994 on the Motions of M. Bennet Chotard, Mississippi Veterans Memorial Stadium Commission and the Mississippi State Department of Finance and Administration to dismiss the plaintiff's complaint and the Court, having heard the arguments of counsel and having considered the briefs filed by the plaintiff and the defendants, finds that the City of Jackson lacks standing to bring the causes of action set forth in its complaint, that Counts I, III, IV and V fail to state a claim upon which relief can be granted because, as a matter of law, there is no conceivable set of facts upon which the City can prevail on the legal theories set forth in said Counts of Complaint and that Count II of the plaintiff's complaint is barred by the Doctrine of Sovereign Immunity and, therefore, that the Plaintiff's complaint should be dismissed, with prejudice;

(emphasis added)

¶6. Aggrieved by the lower court's decision to grant the Commission's motion, the City appeals requesting review of the following issue.

**WHETHER THE TRIAL COURT ERRED IN DISMISSING THE INSTANT LAWSUIT BECAUSE THE CITY IN THIS CASE HAS STANDING TO HAVE THE LOWER**

**COURT DECLARE THAT THE PARTIES TO THE DEVELOPMENT AGREEMENT ARE BOUND BY CITY ZONING ORDINANCES.**

¶7. The Commission submitted similar, yet different arguments in its brief, but is not counter-appealing. The Commission argues the issues as follows.

**I. SECTION 55-23-11 IS A CONSTITUTIONAL DELEGATION OF AUTHORITY BY THE LEGISLATURE, NOT SUBJECT TO LEGAL CHALLENGE BY THE CITY OF JACKSON.**

**A. COMMISSION'S LEASING AUTHORITY DOES NOT VIOLATE THE SEPARATION OF POWERS DOCTRINE.**

**B. THE AGREEMENT IS NOT A JOINT VENTURE IN VIOLATION OF SECTION 258 OF THE MISSISSIPPI CONSTITUTION.**

**C. SECTION 55-23-11 DOES NOT VIOLATE SECTION 90 OF THE MISSISSIPPI CONSTITUTION.**

**II. THE CITY HAS NO STANDING OR LEGAL RIGHT TO PREVENT THE LEASING OF STADIUM PROPERTY.**

**A. THE LEGISLATURE HAS MANIFESTED ITS INTENT THAT THE CITY OF JACKSON NOT HAVE THE POWER, AUTHORITY, OR STANDING TO BRING THE INSTANT ACTION.**

**B. THE CITY'S CLAIMS ARE BARRED BY SOVEREIGN IMMUNITY.**

**III. COUNT V EPITOMIZES THE CITY'S FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

**A. NO REMEDY EXISTS AT LAW OR IN EQUITY AS THE CITY HAS NOT AND WILL NOT SUFFER ANY INJURY OR DAMAGES.**

¶8. The City's only argument in its reply brief is the following.

**THE APPELLEE'S RELIANCE ON THE *CITY OF JACKSON V. MISSISSIPPI STATE BUILDING* CASE IS MISPLACED.**

## STATEMENT OF THE FACTS

¶9. On July 13, 1993, the Commission entered into a Project Development Agreement with developer M. Bennett Chotard for the purpose of leasing two parcels of land surrounding the Mississippi Veterans Memorial Stadium for a period not exceeding twenty-five years.[1] The Agreement was entered into pursuant to Mississippi Code Ann. Section 55-23-11(2).

¶10. The City argued that Chotard and the Commission should have to comply with its "special use" zoning restriction despite the "full power and authority" granted to it by the legislature in Section 55-23-11. The Commission's Agreement with Chotard was that the property was going to be and could be developed as

commercial property without any additional expense because "such city zoning is not applicable to state property." The City maintained that if the Commission was able to develop the property commercially, that such development would be "hazardous to the citizens of the City of Jackson" and "would destroy the aesthetic quality of the environment." The Commission and Chotard maintained that their Agreement was lawfully and legislatively authorized.[2] Accordingly, the Commission and Chotard submit that the lower court's dismissal with prejudice should be affirmed in toto.

## DISCUSSION OF ISSUES

**WHETHER THE TRIAL COURT ERRED IN DISMISSING THE INSTANT LAWSUIT BECAUSE THE CITY IN THIS CASE HAS STANDING TO HAVE THE LOWER COURT DECLARE THAT THE PARTIES TO THE DEVELOPMENT AGREEMENT ARE BOUND BY CITY ZONING ORDINANCES.**

**II. THE CITY HAS NO STANDING OR LEGAL RIGHT TO PREVENT THE LEASING OF STADIUM PROPERTY.**

**A. THE LEGISLATURE HAS MANIFESTED ITS INTENT THAT THE CITY OF JACKSON NOT HAVE THE POWER, AUTHORITY, OR STANDING TO BRING THE INSTANT ACTION.**

**B. THE CITY'S CLAIMS ARE BARRED BY SOVEREIGN IMMUNITY.**

¶11. The threshold issue in this case is whether or not the City has constitutional standing to challenge the Agreement. The lower court held that the City lacked standing on apparently all counts in the complaint. Counts I, III, IV, and V were determined to "fail to state a claim upon which relief could be granted because, as a matter of law, there is no conceivable set of facts upon which the City can prevail" on the legal theories in said counts. Count II was held to be "barred by the Doctrine of Sovereign Immunity." Accordingly, the City's complaint was dismissed with prejudice.

¶12. We agree with the circuit court's holding that the City lacked standing to bring the declaratory judgment involved in this case. We find that the City lacked the proper requirements of standing to pursue this action as it is in contravention of the intent of the legislature in promulgating specific legislation regarding the stadium and affirm the trial court on that basis. Accordingly, we need not address the other issues.

## CONCLUSION

¶13. The City of Jackson does not have standing; accordingly, the trial court's dismissal is affirmed.

**¶14. JUDGMENT IS AFFIRMED**.

**SULLIVAN, P.J., PITTMAN, McRAE AND SMITH, JJ., CONCUR. PRATHER, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LEE, C.J., BANKS AND MILLS, JJ.**

**PRATHER, PRESIDING JUSTICE, DISSENTING:**

¶15. Finding the majority opinion to be in clear conflict with prior decisions of this Court, I respectfully dissent. In my view, the majority is incorrect in holding that the City of Jackson did not have standing to sue to enforce its local zoning laws and ordinances.

¶16. This Court noted in *State ex rel. Moore v. Molpus*, 578 So.2d 624, 632 (Miss. 1991), that "[p] arties may sue or intervene when they assert a colorable interest in the subject matter of the litigation *or* experience an adverse effect from the conduct of the defendant, *or* as otherwise authorized by law". (emphasis added) *quoting Harrison County v. City of Gulfport*, 557 So.2d 780, 782 (Miss. 1990)). Thus, in order to have standing, the City must merely show that it has some "colorable interest in the subject matter of the litigation." It can not be validly argued that a City does not have a "colorable interest" in enforcing its zoning laws with regard to property within its city limits. Indeed, I find it hard to imagine a situation in which a city could have a greater interest than with regard to real property which is located in the heart of the city.

¶17. In addition to the "colorable interest" requirement, the City will be found to have standing if it can show that it has experienced an "adverse effect" from the conduct of the defendants *or* if the City's cause of action is "otherwise authorized by law." As will be seen, prior decisions of this Court have specifically granted the City authorization by law to bring the present action to enforce its zoning laws. Moreover, decisions of this Court indicate that a lenient standard of standing applies when parties seek to challenge governmental action in this State. In *Fordice v. Bryan*, 651 So.2d 998, 1003 (Miss. 1995), this Court noted that:

> Under article III, § 2 of the United States Constitution, the federal courts limit review to actual "cases and controversies." Such restrictive language is not found in the Mississippi Constitution. "Therefore, we have been more permissive in granting standing to parties who seek review of governmental actions." citing *Van Slyke v. Board of Trustees*, 613 So.2d 872, 875 (Miss. 1993).

Based on this rather lenient standard, it is clear that the City does have standing to bring the present action to enforce its zoning laws.

¶18. Quite apart from the case law dealing with standing, this Court has entertained the appeals of municipalities on claims very similar to the present one on several occasions, and, in so doing, has impliedly accepted that said municipalities have standing to contest the actions of the state agencies in question. See *City of Jackson v. MS State Building Commission*, 350 So.2d 63 (Miss. 1977); *City of Hattiesburg v. Region XII Commission on Mental Health and Retardation*, 654 So.2d 516 (Miss. 1995). Assuming, arguendo, that the issue of standing was not considered in those cases, the third basis for standing as set forth in *Molpus* is met in the present case, given that the rulings of this Court in *Robinson* and *Hattiesburg* expressly authorize municipalities to enforce reasonable zoning ordinances on state agencies.

¶19. *Molpus* grants a plaintiff standing to sue where "otherwise authorized by law," and this Court has clearly granted municipalities the right to enforce "reasonable zoning ordinances" in the courts of this State. It would be nonsensical for this Court to unanimously declare in *Hattiesburg* that a municipality has the right to enforce "reasonable zoning ordinances," but to later find that the City of Jackson does not even have

standing to bring such a suit in the present case. On trial below, the trier of fact could justifiably reach differing results with regard to the present case from those in *Hattiesburg* and *Robinson*, but there is no justification for finding that the City does not have the basic standing to attempt to assert its own zoning laws in a manner which this Court has specifically endorsed in the past.

¶20. The only basis on which the present case could conceivably be distinguished from *Robinson* and *Hattiesburg* with regard to the standing issue is based on the fact that Miss. Code Ann. § 55-23-5(a) (1989) provides that one of the five members of the Stadium Commission shall be appointed by the mayor of Jackson. The Commission argues that said fact indicates that the Legislature intended that the City's sole voice with regard to the Commission should be through this appointment, and that the legislature thus intended that the City have no standing to contest the Commission's actions. This argument, however, is totally devoid of any basis in law, statutory or otherwise.

¶21. There is nothing within Miss. Code Ann. § 55-23-5 which in any way addresses the issue of standing to sue, and it is quite clear that this rather lengthy statute was written to ensure that the Commission is composed of competent individuals and to ensure that the terms and responsibilities of said individuals are clearly set forth. A reading of this statute also reveals an attempt to ensure a geographically and politically diverse Commission, with two of the members being required to come from outside Hinds county, one required to be appointed by the Governor from within Hinds County, and one member to be selected by the Board of Trustees of Higher Learning.

¶22. It is in this context that the requirement that one of the members come from Jackson and be appointed by the mayor is set forth, and not by any stretch of the imagination in the context of the City's standing to sue. Under the rationale of the Commission, the State of Mississippi, the Board of Trustees, and Hinds County would be all precluded from having standing to sue the Commission based on the fact that they are provided with representation on the Commission. The remainder of § 55-23-5 is concerned with such matters as the compensation, terms of tenure, and qualifications of the commission members. Any legislation purporting to deny a municipality the standing to sue to enforce its own zoning ordinances would likely be unconstitutional, but there is no indication that § 55-23-5 was in any way intended to limit the City's standing to sue.

¶23. Having stated that I consider the City of Jackson to have standing, the question then arises as to whether the lower court was correct in dismissing the five counts of the City's complaint. A holding by this Court that the City has standing to sue would not serve to revive the case, given that the lower court also dismissed all of the Counts in the City's complaint on bases unrelated to considerations of standing.

¶24. The City set forth a number of legal theories for challenging the actions of the Commission with regard to the lease in question. Count I asserts that the Project Development Agreement ("project") is unconstitutional as a violation of the separation of powers as set forth in Article 1, Section 1 of the Mississippi Constitution. Count III asserts that the "aforementioned legislation" (presumably referring to Miss. Code Ann. § 55-23-11) is "invalid and unconstitutional in its application" as an "alienation" of property held "in trust for the public". Count IV asserts that the project in question involves a "joint venture" between a "public body and a private interest, thereby rendering said agreement void as it is contrary to public policy and laws of the State of Mississippi". Count V merely states that "Plaintiff further charges that there is no adequate remedy at law, and unless this Honorable Court intervenes in their behalf, they will, as citizens and taxpayers, and members of the public in general, sustain injury and damage, as aforesaid."

¶25. The City cited no case law precedent before the trial court with regard to the aforementioned issues, and the City's brief before this Court does not even address these issues on appeal. Accordingly, the lower court should be affirmed with regard to the dismissal of these Counts.

¶26. With regard to Count II, the lower court did not hold that said count failed to state a claim upon which relief might be granted, but rather dismissed this count as being barred by the doctrine of sovereign immunity. In Count II, the City asserts that the project, if allowed to be completed, would constitute a "foreseeable danger" to the surrounding community, both physically and aesthetically, and would violate the zoning ordinances of the City of Jackson. In granting the State's motion to dismiss, the lower court apparently accepted the State's argument in its memorandum in support of dismissal, wherein it argued that Miss. Code Ann. § 11-46-3 precluded the City from recovering under Count II on the basis of the doctrine of sovereign immunity.

¶27. The State's argument and the lower court's basis for dismissal, however, were both directly refuted by this Court in *Robinson* and *Hattiesburg.* In *Hattiesburg,* the Mental Health Commission similarly argued that the City of Hattiesburg was barred by the doctrine of sovereign immunity from enforcing its zoning ordinances and building codes on the Mental Health Commission, given that said commission was a "subdivision of the state of Mississippi." *Hattiesburg*, 654 So.2d at 517. This Court rejected this argument, noting that we had held in *Robinson* that:

> [T]he city was also an arm of the sovereign, with the right and duty to govern non-educational matters, including public safety and, therefore, it could enforce its off street parking ordinance with respect to the school district property. (citing *Robinson*, 467 So.2d at 917). Thus, *Robinson* stands for the proposition that although it is recognized that both authorities are vested with some powers regarding construction and the selection of building sites, reasonable zoning restrictions aimed at public safety and the elimination of public nuisances may be enforced. The chancery court erred in concluding otherwise.

*Hattiesburg*, 654 So.2d at 518.

¶28. *Robinson* and *Hattiesburg* are directly on point and leave no doubt whatsoever that Count II of the City's complaint is not barred by the doctrine of sovereign immunity. Moreover, as discussed earlier, the fact that this Court not only considered, but also granted, very similar appeals from two other municipalities clearly indicates that this Court did not find said cities to lack standing to bring the complaints in question. Accordingly, I would reverse the lower court with regard to the finding that the City did not have standing and with regard to the dismissal of Count II and remand to the lower court for trial on Count II of the City's complaint.

¶29. Having stated my opinion that *Robinson* and *Hattiesburg* are controlling in the present case with regard to the issues of standing and sovereign immunity, I wish to emphasize that I neither endorse nor oppose a similar result being reached in the present case on remand as was reached in the aforementioned cases. Further, as discussed below, past decisions of this Court illustrate that the majority's opinion is in fact based on considerations which are relevant in a trial on the merits of the case, rather than on appeal from the granting of a motion to dismiss.

¶30. This Court's holding in *Robinson* served to limit this Court's finding in *City of Jackson v. MS State Building Commission* (that the Building Commission had been granted plenary power by statute and did

not have to follow municipal ordinances) to the facts of said case. ***Robinson,*** 467 So.2d at 917. ***Robinson***, however, obviously did not preclude this Court or a lower court from finding in the future that the legislature has granted plenary power to a given state agency. This Court stated in ***Robinson*** that:

> The municipal school district does not enjoy the plenary power in the construction of schools that was granted to the Building Commission. While the school district is empowered to locate and cause to be constructed school buildings to meet the needs of the district, ... it must obtain the approval of the location, plans, and specifications from the Educational Finance Commission to receive state and local funds for the construction of those facilities. ***Id.***

Thus, ***Robinson*** stands in part for the proposition that not all state agencies acting pursuant to statutory authority have plenary power, but this Court did not hold in said opinion that the Building Commission is the only state agency that may be vested with plenary power.

¶31. Even assuming that a state agency *does* have plenary power, ***Hattiesburg*** indicates that the rather stringent holding in ***City of Jackson v. MS State Building Commission*** that the Building Commission did not have to comply in any manner with local zoning ordinances, reasonable or otherwise, only has precedential value with regard to that commission. Nothing in ***Hattiesburg,*** however, indicates that this Court considers issues regarding plenary power to be irrelevant in determining whether or not a given zoning ordinance should be enforced on a state agency. I would note that, in ***Hattiesburg***, the Mental Health Commission was granted power to choose facilities in areas which the State had no ownership interest and the location of which were unknown to the legislature. As such, this Court was not faced with a specific legislative grant of power with regard to specific, state-owned property as in the present case.

¶32. I would submit that, in cases in which a state agency has been found to have been granted plenary power, municipal laws and zoning ordinances should be enforced against said agency only if enforcement thereof would not be inconsistent with the intent of the legislature as expressed in the statute. This Court in ***Hattiesburg*** rightfully backed away from the complete deference shown to state statutes in ***City of Jackson v. MS State Building Commission***, but municipal zoning ordinances should nevertheless not be enforced against a state agency if the enforcement thereof would unduly interfere with the agency's exercise of plenary power as specifically set forth in a state statute.

¶33. A zoning ordinance which is "reasonable" for ordinary purposes should nevertheless not be enforced against a state agency which has been granted plenary power if its enforcement would be in direct contravention of a state statute or of the intent of the legislature in passing said statute. At the same time, I see no reason why those state agencies which are granted plenary power should not be obligated to comply with reasonable local ordinances so long as compliance with said ordinances is consistent with the intent of the legislature in granting said plenary power.

¶34. In reading the majority opinion, it appears that the majority shares at least some of the views expressed above. In setting forth their opinion, the majority held that:

> We find that the City lacked the proper requirements of standing to pursue this action as it is in contravention of the intent of the legislature in promulgating specific legislation regarding the stadium and affirm the trial court on that basis.

¶35. Given the "full power" granted to the Commission by § 55-23-11 with regard to leasing specific, state-

owned property, I share the majority's conclusion that the City *may* be precluded from enforcing the zoning laws in question. The City should only be so precluded, however, if it is so determined in the context of a trial on the merits based on the case law set forth by this Court in **Robinson**, **Hattiesburg**, and similar cases. A finding that the City's enforcement of its zoning laws is contrary to the intent of the legislature in granting the Commission plenary power would be a basis for the Commission's prevailing on the merits of the case below. It is emphatically not, however, a basis for denying the capital city of this State the basic standing to come into court and attempt to enforce its own zoning laws within its own city limits in a manner in which this Court has repeatedly authorized municipalities to do. Accordingly, I dissent.

**LEE, C.J., BANKS AND MILLS, JJ., JOIN IN THIS OPINION.**

1. The two parcels of land are approximately eight and three acres respectively.

2. The Agreement was approved by the Department of Finance and Administration as required by §55-23-11(3).