# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2024-IA-00209-SCT

***BUSBY OUTDOOR LLC AND MISSISSIPPI
DEPARTMENT OF AGRICULTURE AND
COMMERCE***

***v.***

***CITY OF JACKSON, MISSISSIPPI, THE LAMAR
COMPANY, LLC AND KANE DITTO***


| | |
|---|---|
| DATE OF JUDGMENT: | 01/26/2024 |
| TRIAL JUDGE: | HON. TAMETRICE EDRICKA HODGES |
| TRIAL COURT ATTORNEYS: | SHERIDAN ASHANTI SIMONE CARR |
| | E. CLAIRE BARKER |
| | DREW McLEMORE MARTIN |
| | LISA ANDERSON REPPETO |
| | CATORIA PARKER MARTIN |
| | TAYLOR NICOLE HOUSTON |
| | MICHAEL JAMES BENTLEY |
| | RANKIN SUMNER FORTENBERRY |
| | ROY D. CAMPBELL, III |
| | WILLIAM V. WESTBROOK, III |
| | JOHANNA MALBROUGH MCMULLAN |
| | CODY CAROL BAILEY |
| | WILLIAM DEMENT DRINKWATER |
| | SHELDON G. ALSTON |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | CODY CAROL BAILEY |
| | JAMES GARY McGEE, JR. |
| | SHELDON G. ALSTON |
| | WILLIAM DEMENT DRINKWATER |
| ATTORNEYS FOR APPELLEES: | MICHAEL JAMES BENTLEY |
| | LISA ANDERSON REPPETO |
| | SAMUEL L. BEGLEY |
| | SHERIDAN ASHANTI SIMONE CARR |
| | DREW McLEMORE MARTIN |
| | RANKIN SUMNER FORTENBERRY |

NATURE OF THE CASE:        CIVIL - OTHER
DISPOSITION:        REVERSED, VACATED, AND RENDERED - 08/28/2025

MOTION FOR REHEARING FILED:

## CONSOLIDATED WITH

## NO. 2024-CA-00258-SCT

*BUSBY OUTDOOR, LLC AND MISSISSIPPI DEPARTMENT OF AGRICULTURE AND COMMERCE*

**v.**

*THE CITY OF JACKSON, MISSISSIPPI, THE LAMAR COMPANY, LLC AND KANE DITTO*

DATE OF JUDGMENT:        02/23/2024
TRIAL JUDGE:        HON. TAMETRICE EDRICKA HODGES
COURT FROM WHICH APPEALED:        HINDS COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANTS:        CODY CAROL BAILEY
        JAMES GARY McGEE, JR.
        SHELDON G. ALSTON
        WILLIAM DEMENT DRINKWATER
ATTORNEYS FOR APPELLEES:        MICHAEL JAMES BENTLEY
        LISA ANDERSON REPPETO
        SAMUEL L. BEGLEY
        SHERIDAN ASHANTI SIMONE CARR
        DREW McLEMORE MARTIN
        RANKIN SUMNER FORTENBERRY
NATURE OF THE CASE:        CIVIL- OTHER
DISPOSITION:        REVERSED, VACATED, AND RENDERED - 08/28/2025

MOTION FOR REHEARING FILED:

**BEFORE KING, P.J., MAXWELL AND GRIFFIS, JJ.**

**KING, PRESIDING JUSTICE, FOR THE COURT:**

¶1. The City of Jackson, Mississippi (City), sought to enforce its municipal sign and

zoning ordinances on a billboard owned by the Mississippi Department of Agriculture and Commerce (MDAC) and located on state-owned property situated within the City. The billboard was built and is operated by Busby Outdoor, LLC (Busby). The trial court granted injunctive relief to the City until MDAC and Busby comply with the City's sign ordinance. Because the trial court erred by determining that the City has the power to enforce its sign ordinance on this state-owned Billboard, this Court reverses the chancery court's judgment, vacates the injunction, and renders judgment in favor of MDAC and Busby, dismissing the City's complaint with prejudice.

### FACTS AND PROCEDURAL HISTORY

¶2. On May 20, 2021, Busby and MDAC entered into a State Fairgrounds Licensing Agreement (Agreement) in which Busby donated a $460,000, three-sided, thirty-five-foot-tall, LED billboard to MDAC. Busby committed to construct the billboard on MDAC's property at the intersection of High Street and Jefferson Street in Jackson, and then to manage, operate, and license it for a term of twenty years under MDAC's supervision. This property is part of the State Fairgrounds. Pursuant to the Agreement, Busby began constructing the billboard on MDAC's property.

¶3. On July 7, 2022, the City, The Lamar Company, LLC, and former mayor of Jackson, Kane Ditto, filed a Complaint against Busby seeking declaratory and injunctive relief based on claims that Busby violated the City's sign ordinance and a zoning ordinance[1] by building and operating a billboard within the City's High Street Overlay District without a permit,

---

[1]The zoning ordinance at issue is the City's zoning ordinance that creates and regulates the High Street Overlay District.

without following restrictions, and without obtaining a variance. The Complaint also sought a determination that the Billboard was a public nuisance because of its operation in continuous violation of the City's ordinances and its alleged threat to the public safety and the general welfare of drivers and pedestrians on High Street.

¶4. The Billboard was completed on or about on July 19, 2022. Busby was served with a summons and the initial Complaint the next day.

¶5. After the parties filed further pleadings and motions, including Busby's motion to dismiss or for summary judgment, the chancery court ordered Plaintiffs to include MDAC as a necessary party to the action. Pursuant to that order, Plaintiffs filed a Second Amended Complaint that added MDAC as a defendant. MDAC consequently filed a motion to dismiss, which included a request to dismiss both Lamar and Ditto for lack of standing. Additionally, Busby renewed its pending motion to dismiss or for summary judgment.

¶6. The Hinds County Chancery Court held a hearing on Defendants' motions to dismiss. On January 26, 2024, it entered an order in which it denied the motions to dismiss or for summary judgment, and purported to order that "the Plaintiffs' Second Amended Complaint is hereby granted in part and denied in part."

¶7. First, the court determined that the City had standing to bring the suit, but it dismissed Lamar and Ditto for lack of standing.[2] Second, the court held that MDAC was required to comply with the City's sign ordinance, reasoning that "[s]ince MDAC only has general authority, as opposed to specific authority, to erect the Sign, the City's Sign Ordinance is

_____

[2]No party appeals the dismissal of Lamar and Ditto for lack of standing, so that issue is not before this Court.

4

applicable to the Sign, and the defendants are in violation of the City's Sign Ordinance." However, the court found that the zoning ordinance at issue specifically exempted properties used by state institutions, thus it found that the City's zoning ordinance did not apply to the billboard. Further, the court held that the billboard was a public nuisance because it was in violation of the sign ordinance. Consequently, the chancery court issued a temporary injunction halting operation of the billboard until Defendants complied with the City's Sign Ordinance.

¶8. MDAC filed its "Motion to Modify the Court's January 26, 2024 Order to Clarify That it is a Final Judgment, or Alternatively, For Entry of a Final Judgment, and a Motion to Stay Pending Appeal." Busby joined this motion. MDAC requested the court modify the January 26 Order in the following ways:

(a) retitle the Order as a "Final Judgment;" (b) rule on the Plaintiffs' request for costs and attorneys' fees, denying the same; (c) delete the language "but temporarily until the Defendants comply with the City's Sign Ordinance'" and (d) add the language "All relief not expressly granted in this Final Judgment is denied."

Additionally, MDAC requested that the court stay the January 26 Order so Defendants need not tear down the billboard while awaiting appellate review.

¶9. Upon request from the chancery court, the parties submitted proposed orders that would clarify that the January 26 Order was a final judgment under Mississippi Rule of Civil Procedure 58. Both parties agreed on a final judgment denying all relief requested in the Second Amended Complaint that was not specifically granted in the chancery court's January 26 Order, including Plaintiffs' request for costs and attorneys' fees. However, the parties

5

disagreed on whether the court should stay the order pending appeal. On February 23, 2024, the court entered an order identical to the January 26 Order, except the February 23 Order noted that attorneys' fees would be handled by separate order. Ultimately, the chancery court did not enter the agreed Rule 58 final Judgment.

¶10. On February 26, 2024, both MDAC and Busby filed a Notice of Appeal with this Court. In April 2024, this Court issued two separate status request letters to the chancery court requesting status updates on the pending motions.

¶11. On April 24, 2024, the chancery court issued an Order to Show Cause ordering the parties to explain why the billboard was still operating when the trial court had enjoined its operation. A day later, both Busby and MDAC informed the chancery court that the billboard had been turned off. On April 30, 2024, the chancery court lifted the show cause order, granted the motions to clarify that the January 26 and February 23 Orders were Rule 58 final judgments, and denied the request for a stay pending appeal.

¶12. On May 13, 2024, this Court granted Busby's petition for interlocutory appeal and stayed the trial court proceedings pending resolution. It also consolidated Busby's interlocutory appeal with its and MDAC's February 26 appeals. Busby also filed a motion with this Court to stay the injunction pending appeal, which this Court denied on July 18, 2024.

¶13. On appeal, MDAC argues: 1) the trial court erred by holding that MDAC is required to comply with the City of Jackson's sign ordinance; 2) the trial court erred by finding that MDAC's Billboard constituted a public nuisance; 3) the trial court erred by granting

6

summary judgment in favor of Plaintiffs without following proper summary judgment procedure; and 4) the trial court erred by finding that the City was entitled to attorneys' fees and costs.

¶14. Busby argues: 1) the City lacks constitutional standing or authority to enforce its zoning ordinances in this case; 2) the trial court improperly treated the City's Second Amended Complaint as a *sua sponte* motion for an injunction without following proper procedures; 3) the injunction fails because no bond was required; and 4) if the injunction is vacated, Busby is entitled to recover attorneys' fees and damages under Mississippi Code Section 11-13-37 (Rev. 2019).

## ANALYSIS

### *1. Standard of Review*

¶15. The parties dispute the proper standard of review. "This Court reviews a trial court's grant or denial of a motion for summary judgment or a motion to dismiss under a de novo standard." *Miss. Dep't of Transp. v. Musgrove*, 294 So. 3d 609, 612 (Miss. 2020) (internal quotation marks omitted) (quoting *Arceo v. Tolliver*, 949 So. 2d 691, 694 (Miss. 2006)). Similarly, issues of statutory interpretation are reviewed under a de novo standard of review. *Foreman v. DHP1, LLC*, 406 So. 3d 763, 767 (Miss. 2025) (citing *Greenville Pub. Sch. Dist. v. Thomas*, 352 So. 3d 190, 192 (Miss. 2022)). Regardless, this Court will review this dispute under a de novo standard as the primary issue is a matter of law, and matters of law are reviewed de novo. *Brandi's Hope Cmty. Servs., LLC v. Walters*, 391 So. 3d 162, 166 (Miss. 2024).

## 2. *Whether the state is subject to the City's ordinances*.

¶16. The primary and dispositive issue is whether the trial court erred by finding that the state property at issue is subject to the City's sign ordinance. The parties dispute whether the City has the authority to enforce its municipal sign ordinance on the billboard that is situated on state-owned land. In other words, the issue is whether the creation has the authority to regulate its creator.

¶17. As a general matter, the state's sovereignty is not subject to statutory restrictions; thus, most statutes do not restrict the state itself. *Coleman v. Whipple*, 191 Miss. 287, 2 So. 2d 566, 568 (1941). General language in a statute does not include the state, nor does it restrict the state's actions. *Id.* However, specific statutory provisions that explicitly and clearly apply to the state may restrict the state. *Id.*; *Josselyn v. Stone*, 28 Miss. 753 (1855) ("[I]t is the settled doctrine that the general words of a statute do not include the State, or affect her rights, unless she be specifically named, or it be clear and indisputable from the act that it was intended to include the State."); *City of Jackson v. State ex rel. Mitchell*, 156 Miss. 306, 126 So. 2, 4 (1930) ("It is undoubtedly the general rule that, where the effect of a statute is to restrict the rights of, or impose liabilities upon, the state or its political subdivisions, it will be held to be inapplicable to them, unless they are included expressly or by necessary implication."). Thus, to restrict the state, a statute must do so with clarity and specificity.

¶18. The City is a municipality, which is "an incorporated city . . . within the state." Miss. Code Ann. § 17-1-1(a) (Rev. 2024). The legislature passes general laws that allow the creation of municipalities, and municipalities hold only the powers granted to them by statute.

8

Miss. Const. art. 4, § 88; *City of Belmont v. Miss. State Tax Comm'n*, 860 So. 2d 289, 306 (Miss. 2003) ("[M]unicipalities are but creatures of the state and they possess only such power as conferred upon them by statute."). The legislature does include in municipalities' powers the ability to enact and enforce zoning ordinances to secure public health, safety, and the general welfare of the people within their jurisdiction. Miss. Code Ann. §§ 17-1-3(1), -19 (Rev. 2024). The City relies on these general police powers and zoning powers to argue that it has the ability to regulate state property, maintaining that because the statutes at issue do not exempt the state, the state is consequently restricted by them. However, the City flips the legal standard on its head—the state is only restricted by statute if the statute specifically restricts the state; statutes of general application that do not specifically exempt the state still do not restrict the state. *City of Jackson v. Miss. State Bldg. Comm'n (Jackson I)*, 350 So. 2d 63, 64-65 (Miss. 1977). The City cites Mississippi Code Sections 17-1-3 and -19, which empower municipalities to pass and enforce zoning laws. Miss. Code Ann. §§ 17-1-3, -19 (Rev. 2024). These statutes are both silent on whether a municipality can enforce zoning ordinances against the state on state property; thus, under the rule that general statutes do not restrict the state, the statutes empowering municipalities to enact and enforce zoning laws are inapplicable to the state itself on its own property. *Jackson I*, 350 So. 2d at 65.

¶19. Moreover, the statutes that empower MDAC to use its property do not specifically subject MDAC to municipal zoning laws. MDAC "shall have charge of the State Fairgrounds located in Jackson, Mississippi, including all buildings and improvements thereon, and shall have full power and authority in perfecting plans and causing to be held thereon the

9

Mississippi State Fair and other such events that may be authorized by the department." Miss. Code Ann. § 69-5-3(3) (Supp. 2024). Pursuant to its charge over the State Fairgrounds, MDAC "may allow a commercial . . . entity to use, publish and advertise such entity's name in connection with any of the buildings, improvements, grounds or objects located on the State Fairgrounds . . . in return for a monetary consideration paid to the [D]epartment." Miss. Code Ann. § 69-5-3(6) (Supp. 2024). MDAC is also granted authority to "allow . . . a public, private, commercial or charitable entity to use, publish or advertise the entity's name on department property and in its publications." Miss. Code Ann. § 69-1-48(3)(a) (Supp. 2024). Additionally, MDAC "shall have the authority to enter into a lease or right-of-way with a third party covering any land or buildings on the State Fairgrounds . . . ." Miss. Code Ann. § 69-5-3(8) (Supp. 2024). MDAC and the commissioner of agriculture also have overarching duties to promote the state's agricultural programs and products. Miss. Code Ann. § 69-1-13(a), (n) (Rev. 2021); Miss. Code Ann. § 69-1-203 (Rev. 2021). None of these statutes subject MDAC's broad power over its state-owned land, and specifically over the State Fairgrounds, to municipal regulations. And the City does not dispute that the lease between Busby and MDAC was a valid exercise of MDAC's power over the State Fairgrounds and its other lands.

¶20. Similarly, in *Jackson I*,[3] the City argued that the state building commission was required to obtain a building permit for the construction of a state building within the City limits. *Jackson I*, 350 So. 2d at 64. The City cited the statute empowering municipalities to adopt building codes as its authority to regulate the state. *Id.* at 64-65. The Court

_____

[3] MDAC also relies on *City of Jackson v. State (Jackson II)*, 676 So. 2d 257 (Miss. 1996). However, *Jackson II* was decided on the issue of standing.

10

acknowledged the proposition that general statutes do not restrict the state; the state is only restricted by statute when it is specifically or necessarily implicated by statute. *Id.* The Court found that the language of the building code statute "does not expressly, or by implication, subject buildings erected by the State to building codes enacted pursuant thereto, neither does it give municipal corporations the power to require the State to obtain and pay a fee for a building permit." *Id.* at 65.

¶21. In contrast, a state statute expressly granted the building commission broad "authority to erect state buildings, make inspections, prepare plans and specifications, and supervise the erection of state buildings." *Id.* at 65. This Court found that "[i]t is not reasonable to assume that, the legislature, by enacting [the building-code statute], intended to diminish the authority of the [building] Commission contained in [the building-commission statute] and give municipalities the power to narrow or destroy the state's sovereignty with respect to its own buildings." *Id.* The building commission statute, it concluded, "delegates plenary power to the Commission to construct state buildings. Such grant of specific power denies contrary power. If the legislature had intended the [building] Commission . . . to . . . [obtain municipal permits], then such requirement would have been expressly stated therein." *Id.* at 66. The Court concluded that "[t]he building code of the City must therefore yield to the sovereignty of the State." *Id.*

¶22. Similarly, statutory law delegates plenary power over the State Fairgrounds to MDAC. Nothing in the statutes governing MDAC and nothing in the statutes allowing municipalities to enact zoning laws indicate that MDAC must follow zoning ordinances to obtain permits

11

to build on its own property. If the legislature had so intended, it would have stated so expressly; consequently, the zoning ordinances at issue must yield to the sovereignty of the state.

¶23. The City relies on two distinguishable cases for its proposition that the state must comply with the sign ordinance. *See Robinson v. Indianola Mun. Separate Sch. Dist.*, 467 So. 2d 911 (Miss. 1985); *City of Hattiesburg v. Region XII Comm'n on Mental Health & Retardation*, 654 So. 2d 516 (Miss. 1995).

¶24. In *Robinson*, two private citizens sought to enjoin the Indianola School District from building a new gymnasium on its property, arguing it was a public nuisance and in violation of the City of Indianola's municipal zoning ordinances regarding off-street parking. *Id.* at 913. This Court addressed the issue of whether the school district was required to comply with the city's parking ordinance. *Robinson*, 467 So. 2d at 916-18. It distinguished the situation from *Jackson I*, nothing that "[t]he municipal school district does not enjoy the plenary power in the construction of schools that was granted to the Building Commission." *Robinson*, 467 So. 2d at 917. It noted that both the school district and the City of Indianola are each "an arm of the sovereign[.]" *Id.* Notably, neither entity is *the* sovereign, or the state of Mississippi. The school district had authority to select and plan school buildings, subject to approval, and the City of Indianola had the right and duty to govern public safety. *Id.* Because the off-street parking ordinance ultimately related to the safety of municipal streets, the Court found that "[t]he condition and safety of the Indianola public streets . . . is in the sovereign domain not of the municipal school district, but the city of Indianola." *Id.* Thus,

12

the Court concluded that the parking ordinances applied to the school district. *Id.*

¶25.    In *Hattiesburg*, the Region XII Commission on Mental Health and Retardation (Region XII), a regional mental-health commission, entered into a purchase agreement for property located within a residential area in the City of Hattiesburg to be used as a traditional housing facility. *Hattiesburg*, 654 So. 2d at 516. However, the City of Hattiesburg notified Region XII that the planned use must first comply with the city's land use regulations, zoning ordinances, and necessary permits. *Id.* On appeal, this Court addressed whether Region XII was required to comply with the municipal zoning ordinances of the City of Hattiesburg. *Id.* It noted that Region XII had the authority to determine the general location of a regional mental-health facility, and that the City of Hattiesburg had the authority to regulate and control land usage. *Id.* at 517. It distinguished *Jackson I*, noting that *Jackson I* applied to the state's authority to regulate its own property. *Hattiesburg*, 654 So. 2d at 517. The Court then held that reasonable zoning restrictions may be enforced against Region XII because both subdivisions of the state were vested with some powers regarding construction and site selection. *Id.* at 518.

¶26.    *Robinson* and *Hattiesburg* are distinguishable from the present case for three reasons. First, the parties in conflict were coequal political subdivisions of the state. In the present case, the dispute is between the City of Jackson, a political subdivision, and MDAC, a state department.[4] Second, neither involves a municipality attempting to regulate the state or a state

---

[4]Under the Mississippi Tort Claims Act, the term "[g]overnmental entity" includes "political subdivisions" and the "state." Miss. Code Ann. § 11-46-1(g) (Supp. 2024) (internal quotation marks omitted). A "[p]olitical subdivision" is defined as "any body politic or body corporate other than the state responsible for governmental activities only in geographic areas

department's use of its own property. Here, the City is trying to enforce its sign ordinance on MDAC's billboard, located on state property. Last, neither case sought to enforce an ordinance that is in direct conflict with the state's statutorily delegated powers. In the present case, the legislature has given MDAC broad authority to advertise and manage the State Fairgrounds where the billboard is located.

¶27. Nothing in the statutes granting MDAC broad power over state-owned property requires it to comply with the City's sign ordinance on its own property. And nothing in the zoning statutes renders them applicable to state-owned property. The zoning ordinances must yield in this case to state sovereignty. The chancery court erred by enjoining MDAC and Busby from operating the billboard.

### 3. Nuisance

¶28. Because the chancery court's nuisance ruling was predicated on its finding that the billboard was a nuisance per se due to its continuous violation of zoning ordinances, this holding is also error.

### 4. Other Arguments

¶29. MDAC and Busby present several alternative arguments regarding why the injunction is in error or invalid. Because this Court reverses the chancery court's judgment on the primary issue, these issues are moot, and we decline to address them.

smaller than that of the state, including, but not limited to, any county, *municipality*, school district, charter school . . . ." Miss. Code Ann. § 11-46-1(i) (Supp. 2024) (emphasis added) (internal qutoation marks omitted). The "[s]tate" is defined as "the state of Mississippi and any office, *department*, agency, division, bureau, commission, board, institution, hospital, college, university, airport authority or other instrumentality thereof. . . ." Miss. Code Ann. § 11-46-1(j) (Supp. 2024) (emphasis added) (internal quotation marks omitted).

14

### 5. *Busby's Attorneys' Fees*

¶30.    Busby argues that if this Court reverses the chancery court's decision, we should award Busby damages and attorneys' fees pursuant to Mississippi Code Section 11-13-37. Section 11-13-37 applies to chancery courts upon the dissolution of an injunction after a hearing on a motion to dissolve an injunction.  Miss. Code Ann. § 11-13-37.   The statute is inapplicable here; thus, this issue has no merit.

## CONCLUSION

¶31.    Because the City cannot regulate the state on state property without a specific grant of authority to do so, and because no specific grant of authority exists, this Court reverses the chancery court's judgment, vacates the injunction, and renders judgment in favor of MDAC and Busby, dismissing the City's complaint with prejudice.

¶32.    **REVERSED, VACATED, AND RENDERED.**

**RANDOLPH, C.J., COLEMAN, P.J., MAXWELL, CHAMBERLIN, ISHEE, GRIFFIS AND SULLIVAN, JJ., CONCUR.  BRANNING, J., NOT PARTICIPATING.**